Anderson HUGHES, Appellant,

v.

The STATE of Texas, Appellee.

No. 51827.

Court of Criminal Appeals of Texas, En Banc.

March 15, 1978.

Larry Miller, Dallas, for appellant.

Henry M. Wade, Dist. Atty. and W. T. Westmoreland, Jr., Douglas D. Mulder, Stephen Tokoly and Les Eubanks, Asst. Dist. Attys., Dallas, for the State.

OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of capital murder wherein the punishment was assessed at death. *See* V.T.C.A., Penal Code, Section 19.03, and Article 37.071, V.A.C.C.P.

During the early morning hours of September 23, 1974, appellant drove into a service station in Mesquite, a suburb of Dallas, in a truck which he had previously stolen. The station was closed for the night and, when appellant saw a Buick automobile parked inside, he broke the glass out of a window and climbed through it into the station. The keys were in the ignition of the automobile. Appellant drove the vehicle out and started around to the front of the station when a marked police car drove in and blocked his path.

A uniformed officer got out of the police car and ordered appellant to exit the Buick. As appellant got out he had in his hand a .32 caliber pistol which he pointed at the officer. When the officer saw this he drew his revolver and fired a shot at appellant. Appellant started shooting and the officer fell to his knees. Appellant then obtained a 12 gauge shotgun from the stolen truck and shot the officer in the right side and killed him.

Appellant left in the Buick. After disposing of the pistol, shotgun, shotgun shells and his boots, he drove to Parkland Hospital where he entered the emergency room and advised the attendant that he had been shot. Shell fragments were removed from his thigh.

Appellant was thereafter arrested at the hospital and taken to the Mesquite police station where he gave a written confession after having been warned of his rights by a magistrate. In his confession he stated that he had disposed of the items mentioned above by throwing them in Blue Lake. Upon being taken to the lake, he admitted the falsity of that portion of his statement and directed the officers to a vacant house where the officers recovered the items sought.

Appellant does not challenge the sufficiency of the evidence. He first contends that the appeal should be abated because the trial court erroneously pronounced sentence. The identical contention was rejected in *Hovila v. State*, 532 S.W.2d 293, 297 (Tex.Cr.App.1976), wherein it was observed that "the provisions of Article 37.-071, supra, referring to 'sentence to death,' etc., refers [sic] to the assessment of punishment and not to a formal sentence, and the provisions of Article 42.04, supra [V.A.C.C.P.], still control." As in *Hovila*, the trial court was apparently misled by the awkward wording of Article 37.071, supra, but it apparently recognized that another sentence setting the execution date would be required. Accordingly, there is no reason to abate the appeal because the court pronounced sentence. It will be regarded as surplusage.

Appellant next contends that Article 1257, V.A.P.C., violated the Eighth and Fourteenth Amendments to the United States Constitution. Since this article was repealed effective January 1, 1974, and was not even in existence at the time of the commission of the instant offense, it is not relevant to this case.

Appellant contends that this State's new statutory scheme for capital murder, including the possible infliction of the death penalty, violates his constitutional rights to due process and to be free from cruel and unusual punishment. He further contends that imposition of the death penalty under any circumstances offends the Eighth and Fourteenth Amendments. The same contentions were rejected by this Court in *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App. 1975), and by the United States Supreme Court in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). *See also Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

Appellant next contends that twenty-four veniremen were excused in violation of

*Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).[1]

In *Hovila v. State*, supra, we held that the holding of *Witherspoon* was still viable in light of the new statutory scheme providing for the imposition of the death penalty adopted after the decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976), we held that it was unnecessary to consider the *Witherspoon* question where the prospective juror was disqualified under V.T.C.A., Penal Code, Section 12.31(b). *See also Burns v. State*, 556 S.W.2d 270 (Tex.Cr.App.1977).

Section 12.31(b) provides:

"Prospective jurors shall be informed that a sentence of life imprisonment or death is mandatory on conviction of a capital felony. A prospective juror shall be disqualified from serving as a juror unless he states under oath that the mandatory penalty of death or imprisonment for life will not affect his deliberations on any issue of fact."

Prospective jurors Margaret Houston and Ida Barton expressed opposition to the death penalty. When asked by the court whether such opposition would affect her deliberations on the three fact issues submitted to the jury at the punishment stage, Houston stated that her beliefs could affect her deliberations on the issues because she "would not want to send a man to death. . . ." Barton stated that her feelings would give her "a lot of problems" in answering the special issues objectively and that those feelings would influence her answers to the questions submitted to her.

It is clear that Houston and Barton were properly excused under Section 12.31(b) and that we need not determine whether their statements also disqualified them under the *Witherspoon* doctrine.

Neither the court nor the prosecutor questioned prospective juror Norma McClay with regard to whether she was unequivocally opposed to the death penalty in all circumstances. The court observed that she had expressed opposition to the death penalty in a questionnaire and inquired whether such opposition would affect her deliberations upon the fact issues. She responded that she would answer the three questions without regard to the consequences of such action, but then vacillated and stated that she did not know whether her deliberations would be affected by her beliefs. When the court stated that she had to determine whether her deliberations would or would not be affected, she equivocated and finally stated that she did not know.

Prospective juror Virginia Ball stated that she believed in the death penalty only in certain cases. She expressed doubt that she could answer special issue number two affirmatively because she did not think she could predict a defendant's future conduct. She then stated that she would have to consider the issue carefully before answering and that she "might" give an affirmative answer under certain circumstances. The court then told her that it required a

---

1. In *Witherspoon*, the Supreme Court of the United States stated:

 "Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." The Court further stated:

 "Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position."

 The Court elaborated in *Boulden v. Holman*, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969):

 "[i]t is entirely possible that a person who has a 'fixed opinion against' or who does not 'believe in' capital punishment might nevertheless be perfectly able as a juror to abide by existing law—to follow conscientiously the instructions of a trial judge and to consider fairly the imposition of the death sentence in a particular case."

 And, in *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976), the Court reaffirmed its adherence to the *Witherspoon* doctrine and held that no death penalty can stand if a single venireman is excluded in violation of that doctrine.

definite response. After more equivocation, she stated that she did not know whether the mandatory penalty of death in the event of a "yes" answer to each of the special issues would affect her deliberations upon special issue number two.

Upon interrogation by the court, prospective juror Irene Hawk stated that she believed in the death penalty "in some cases," but then stated that she did not believe she could answer each special issue "yes." She declared that she could not answer the issues affirmatively without difficulty even though the evidence dictated affirmative answers.

■ Section 12.31(b) does not disqualify prospective jurors who would find it difficult to impose the death penalty. But this provision does disqualify those prospective jurors who cannot state under oath that the mandatory penalty of death or life imprisonment will not affect their deliberations on any issue of fact and, thus, could not be fair and impartial jurors. None of the three prospective jurors in question—McClay, Ball and Hawk—could state that ' the mandatory penalty would not affect her deliberations upon the fact issues. While it is clear that the answers of these prospective jurors would not have disqualified them under the holding in *Witherspoon*, nevertheless their answers disqualified them under Section 12.31(b), without the necessity of considering the *Witherspoon* question. *Moore v. State*, supra; *Burns v. State*, supra.

■ Prospective jurors Albert Baysinger, Gus Reese, Jeremiah Sherman, Ethelene Shaw, Ila Mays, Beverly Thomas, Alan Hurley, Oliver Graves, Harvey Nix, Ruth McKelvey, Annie Kelly, Beulah Darnell and Martha Sloan all clearly indicated that their deliberations on the special fact issues would be affected because the imposition of the death penalty was dependent on their answers to such issues. Accordingly, these prospective jurors were disqualified under Section 12.31(b).

■ Prospective juror Lawrence Shaw stated his opposition to the death penalty and, when asked whether he could vote for this penalty under any circumstances, he replied that he could not. He then stated that "there could not be an iota of doubt" before he could answer each of the three fact issues in the affirmative. The court inquired whether this meant that he held the State to a greater standard of proof than the beyond a reasonable doubt standard, and he responded affirmatively. The court ruled that Shaw was disqualified and excused him.

It is clear from the record that Shaw was biased or prejudiced against a phase of the law upon which the State was entitled to rely for punishment, and, thus, was subject to a challenge for cause under Article 35.-16(b)(3), V.A.C.C.P. Generally, the court should not excuse a prospective juror without challenge unless he is absolutely disqualified under Article 35.19, V.A.C.C.P., because such challenge could be waived by the State. *See* Article 35.16(a), V.A.C.C.P. In the present case, however, appellant did not object on the ground that there was no challenge for cause, nor does he urge this ground on appeal. Hence, no error is presented in this connection. *Moore v. State*, supra.

Appellant's complaint on appeal regarding prospective juror Lawrence Shaw is directed to the *Witherspoon* issue. This complaint is without merit because the record reflects that Shaw was disqualified under Section 12.31(b) and under *Witherspoon*.

Prospective juror Zonetta Beachum did not believe in the death penalty and would not vote for this penalty under any circumstances. Thus, she was excused in compliance with *Witherspoon*.

■ Prospective jurors Rosa Gordon, Rebekah Holmes, Blanche Rivers and Ardella Campbell were excused without objection. Failure to object to the improper exclusion of veniremen waives that right and such exclusion cannot be considered on appeal. *Boulware v. State*, 542 S.W.2d 677 (Tex.Cr. App.1976), cert. denied 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977); *Hovila v. State*, 562 S.W.2d 243 (No. 56,989, decided February 8, 1978).

Appellant next complains that the trial court improperly restricted his voir dire examination of the jury and that consequently he could not intelligently exercise his right to make peremptory challenges. His argument centers on the court's refusal to allow him to ascertain several prospective jurors' attitudes and feelings about psychiatric opinion testimony.

 Counsel may interrogate members of the jury panel in order to intelligently exercise his peremptory challenges and to establish which prospective jurors should be removed for cause. *Abron v. State*, 523 S.W.2d 405 (Tex.Cr.App.1975); *Mathis v. State*, 167 Tex.Cr.R. 627, 322 S.W.2d 629 (1959). The trial court in its sound discretion, however, can and should control the examination of the venire. *Abron v. State*, supra; *Hernandez v. State*, 508 S.W.2d 853 (Tex.Cr.App.1974). Therefore, although the areas which counsel may properly explore in order to exercise his peremptory challenges are broad and cannot be unnecessarily limited [*see Smith v. State*, 513 S.W.2d 823 (Tex.Cr.App.1974)], questions asked in an improper form may be disallowed. *Abron v. State*, supra; *Hernandez v. State*, supra.

 In the present case, the trial court appointed two psychiatrists to examine appellant prior to trial. Anticipating that the psychiatrists would testify for the State at the punishment phase of the trial, defense counsel sought to question several prospective jurors with regard to "how they would feel concerning psychiatric testimony" and "if they heard certain psychiatric testimony, would that influence them in any way." This constituted an improper attempt to require the prospective jurors to commit themselves as to how they would pass upon the credibility of the psychiatric witnesses prior to trial. Cf. *Hunter v. State*, 481 S.W.2d 137 (Tex.Cr.App.1972). Thus, the question was improper and the court properly disallowed it.

Appellant contends that the trial court erred in ruling that his confession was voluntary. He argues that the State failed to refute evidence of coercion.

In compliance with the requirements of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and Article 38.22, V.A.C.C.P., the court held a hearing outside the presence of the jury to determine whether the confession was voluntary. Officer Dale Eckman testified that he went to Parkland Hospital at approximately 6:00 a. m. on September 23, 1974, to take appellant into custody; that appellant remained in his custody from that time until appellant signed a written confession; that four bullet fragments were surgically removed from appellant's right leg at 9:40 a. m.; that forty-five minutes later he (Eckman) left the hospital with appellant and Detective Bullard; that no one provided him with any medication for appellant; that appellant was limping and was in pain only when he walked; that they arrived at the police station at 11:00 a. m.; that appellant was taken immediately before a magistrate; that the magistrate advised appellant of his rights; that appellant then agreed to give Bullard and him (Eckman) a written statement in which appellant admitted shooting Officer Williams; that he (Eckman) began printing the statement at 11:10 a. m. and finished it at 12:20 p. m.; that two police department employees came into the interview room and that appellant voluntarily signed the statement in their presence; that the statement was then typed and signed by appellant at 1:10 p. m.; that appellant was later given lunch; and that no officer threatened, struck, or in other manner coerced appellant.

Dr. Martin L. Schneider testified that he removed four bullet fragments from appellant's leg in the emergency room of the hospital; that the bullet had gone through a large part of leg muscle, but that there was no damage to any nerve or artery; that appellant was not given any type of medication that would alter his state of consciousness or impair his mental abilities; that appellant was given a local anesthetic; that the wound was no more than one and one-half inches deep; that the entire operation had a duration of fifteen minutes; that when the operation was finished appellant

was given penicillin and antibiotics but no pain medication; that the pain associated with this type of wound was not great, but walking on the wounded leg would be painful.

Appellant testified at the hearing for the limited purpose of contesting the voluntariness of his statement. He stated that the gunshot wound caused him extreme pain while he was being interrogated, and that he was deprived of food during this period of time. He further stated that he was threatened and struck on the face and the elbow, and that one officer squeezed a pencil between his fingers.

During cross-examination appellant admitted that neither Officer Eckman nor Officer Bullard had threatened or harmed him. He testified that an unidentified officer had mistreated him, and that such mistreatment occurred *after* he gave the confession.

■ At the *Jackson v. Denno* hearing, the court is the sole judge of the weight and credibility of the witnesses. He may believe or disbelieve all or any part of any witness' testimony. *Myre v. State*, 545 S.W.2d 820 (Tex.Cr.App.1977); *Aranda v. State*, 506 S.W.2d 221 (Tex.Cr.App.1974).

■ The evidence in this case that appellant was threatened and hit after he gave the statement was not pertinent to whether it was voluntary. The evidence that he was in extreme pain while he was being interrogated did raise an issue of fact as to the voluntary nature of the statement. There was ample evidence, however, to support the trial court's findings of fact and conclusions of law. We conclude that the confession was voluntary and properly admitted in evidence. *Myre v. State*, supra; *McKittrick v. State*, 541 S.W.2d 177 (Tex. Cr.App.1976).

■ Appellant also contends that the court erred in refusing to charge the jury on the voluntariness of the confession. Appellant did not testify before the jury and did not call any witness on the issue of voluntariness. There was no evidence before the jury which raised that issue. Thus,

the court did not err in refusing the charge. *Myre v. State*, supra; *Morgan v. State*, 502 S.W.2d 722 (Tex.Cr.App.1973).

Appellant complains of the testimony given by the two psychiatrists at the punishment phase of the trial. He argues that their opinions regarding his propensity to commit future acts of violence were improperly admitted because such opinions stated a legal conclusion.

Prior to trial, defense counsel filed two motions in limine requesting an instruction that the prosecutor refrain from asking any questions during either the guilt or punishment phase with regard to whether appellant would probably commit future acts of violence. The stated basis for these motions was that the question whether appellant represents a continuing threat to society was an ultimate issue for the jury and that allowing testimony along these lines would be an invasion of the province of the jury. *See Hopkins v. State*, Tex.Cr., 480 S.W.2d 212. It appears that the trial court never ruled on these motions.

When Dr. James Grigson was asked at the punishment phase his opinion regarding appellant's propensity to commit future acts of violence, defense counsel objected on the ground that the question was "in the purview of the jury." When the same inquiry was posed to Dr. John Holbrook, counsel objected by re-urging the motions in limine. Both objections were overruled.

■ The contention that the psychiatrists' opinions stated a legal conclusion is raised for the first time on appeal. It is well-established that the ground of error presented on appeal must comport with the objection raised at trial. Hence, nothing is presented for review. *Graham v. State*, 546 S.W.2d 605 (Tex.Cr.App.1977); *Bouchillon v. State*, 540 S.W.2d 319 (Tex.Cr.App.1976).

Finally, appellant contends that Dr. Grigson improperly referred to an extraneous offense. The record reflects:

"Q. So you didn't discuss the case with Mr. Mulder as such, trying to find out the alleged facts or any of the background?

"A. No, not that I recall prior to the time of examining Mr. Hughes. I did after the examination primarily since he had stated that he had been requested not to discuss the offense with me. I did want to look up the information related to the offense so his confession was made available to me and other offenses were made available to me with regard to his juvenile record.

"Q. Did you check into any past record, then?

"A. Yes, sir, I did.

"Q. At a later date? Okay. Now, then, when you said that he didn't express any guilt, what were you referring to, how did you approach this question?

"A. Of course throughout the examination I was attempting to see—he had been in a lot of trouble, burglary—

"MR. HALSEY: Judge, I have to object to unresponsive answers—

"THE COURT: Don't go into the other offenses."

The ground of error raised on appeal does not comport with the objection raised at trial. Thus, *nothing is presented for review. Graham v. State*, supra; *Bouchillon v. State*, supra. Moreover, there was no objection when the psychiatrist first mentioned appellant's involvement in other offenses. The improper admission of evidence does not constitute reversible error if the same facts were shown by other evidence to which *no objection was addressed. Watson v. State*, 532 S.W.2d 619 (Tex.Cr. App.1976); *Hayles v. State*, 507 S.W.2d 213 (Tex.Cr.App.1974).

No reversible error is shown. The judgment is affirmed.

VOLLERS, J., not participating.

PHILLIPS, Judge.

I respectfully dissent to the majority disposition of appellant's ground of error alleging a violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). For the purposes of this dissent I adopt the reasoning of Part I of Judge Roberts' dissent in *Shippy v. State*, 556 S.W.2d 246 at 257.

ROBERTS, J., joins in this dissent.