Christopher PARKER, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–89–00012–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 14, 1990.

Discretionary Review Refused
Oct. 3, 1990.

Kimberly Aperauch Stelter, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

OPINION

CANNON, Justice.

This appeal arises from the conviction of Christopher Parker for aggravated robbery. With enhancement, Parker was sentenced by the jury to ninety-nine years confinement. Parker brings nine points of error on appeal. We find no reversible error by the trial court and affirm the conviction.

The appellant was convicted of committing an armed robbery at an Oshman's wholesale outlet in Houston, Texas on the evening of December 7, 1984. The complainant and principal witness was an Oshman's employee working at one of the cash registers. She testified that a man entered the store, selected a pair of sunglasses from the rack near the cash register, got in line, and when his turn came to pay, he pointed a gun at the complainant and demanded that she put all the money on the counter. She complied, the robber left and she ran to get the manager. She later reported to the responding police officer that the man was white, between the ages of 38 and 41, was 5'8" to 6', weighed between 175 and 185 pounds, and had short brown hair and a mustache.

A few weeks later, the complainant identified the appellant from a five picture photospread. At trial, she testified that he was neatly dressed in a dress shirt and slacks at the time of the robbery, which lead her initially to believe that he was a businessman.

The complainant was the only identifying witness at the trial. The State concedes that the complainant's testimony on the issue of identity was aggressively undermined by the cross-examination. Consequently, the State was permitted to introduce evidence of other similar crimes where the victims had identified the appellant as the robber.

Henry L. Burkholder, III, Houston, for appellant.

The appellant's defense was based on mistaken identity. Testimony of the appellant's girlfriend and another friend was introduced regarding an FBI investigation of a suspect who was allegedly similar to the appellant in appearance. The girlfriend testified that the appellant regularly left Houston and traveled to Tyler to spend the weekend with her. She further testified that on December 13, 1984, six FBI agents pulled her over in Tyler and set up surveillance on her apartment for three days in order to arrest the appellant. Two of the agents showed the girlfriend six photos of a man committing two separate bank robberies in Dallas. She testified that although there was a similarity in appearance, the person in the photos was not the appellant. She testified that she attempted to get the photos from the FBI in preparation for the appellant's trial, but was unsuccessful. The other acquaintance of the appellant that testified in his behalf stated that the photos of the Dallas bank robberies were also shown to her, and that she thought the person depicted in the photos resembled but was not the appellant.

■ In the appellant's first and second points of error, he contends that the trial court committed reversible error in barring the appellant from voir diring a venireman and voir diring the entire venire panel on the range of enhanced punishment where the indictment returned against the appellant contained a single enhancement paragraph. The Court of Criminal Appeals has consistently held that the trial court has wide discretion over the course of the voir dire of a jury panel. *Hughes v. State*, 562 S.W.2d 857, 862 (Tex.Crim.App.1978), *cert. denied*, 439 U.S. 903, 99 S.Ct. 268, 58 L.Ed.2d 250 (1979); *Abron v. State*, 523 S.W.2d 405, 408 (Tex.Crim.App.1975); *Hernandez v. State*, 508 S.W.2d 853, 854 (Tex. Crim.App.1974). There is no abuse of discretion unless the trial court prohibits inquiry about a proper area. *Clark v. State*, 608 S.W.2d 667, 670 (Tex.Crim.App.1980); *Ryan v. State*, 635 S.W.2d 159, 161 (Tex. App.—Houston [1st Dist.] 1982, no pet.). Additionally, questions asked in an improper form may be disallowed. *Hughes*, 562 S.W.2d at 862; *Hernandez*, 508 S.W.2d at

854. The appellant must show that an injury constituted reversible error once he establishes that a restriction of voir dire occurred. *Hernandez*, 508 S.W.2d at 854; *De La Garza v. State*, 650 S.W.2d 870, 877 (Tex.App.—San Antonio 1983, pet. ref'd).

■ The appellant's first point of error involves the attempt to rehabilitate a particular juror who was struck for cause by the State after he stated that under no circumstances could he render a verdict for ninety-nine years or life. The trial court disallowed the appellant's questioning of the prospective juror on the grounds that the hypothetical situation presented was improper. The appellant's hypothetical question depicted a defendant who has been convicted several times, thus involving the issue of enhancement. The questions of the voir dire at that point only involved the range of punishment of five years to life or ninety-nine years for the offense of aggravated robbery. The appellant could only inquire as to the prospective juror's ability to consider the maximum for the worst aggravated robbery imaginable, inquiry into whether the prospective juror could consider the maximum in the case of a repeat offender was improper. It would not have rehabilitated the prospective juror on the issue of whether he could follow the law in regard to the range of punishment for aggravated robbery with no enhancement. The prospective juror in question was properly struck for cause because he made it clear that he could not follow the law on the range of punishment. *Moore v. State*, 542 S.W.2d 664, 669 (Tex.Crim.App. 1976) *cert. denied*, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977); *Stanton v. State*, 747 S.W.2d 914, 921 (Tex.App.—Dallas 1988, pet. ref'd). We find no error in the trial court's ruling and overrule the first point of error.

■ The appellant's second point of error involves his contention that he was prevented from questioning the entire panel about their opinions on the range of punishment with enhancement. The record reflects that he was not prevented from questioning about enhancement, only that

his particular question was disallowed as improper. The appellant never offered a proper question to determine if the members of the panel could consider the full range of punishment with enhancement; i.e. fifteen years to life if there was one prior conviction, or twenty-five years to life if there were two prior convictions. The appellant's proposed question involved the range of five years to life for a defendant with prior convictions, which is a misstatement of the law and is not proper voir dire. *Hughes*, 562 S.W.2d at 863; *Hernandez*, 508 S.W.2d at 854. Therefore, we find no error by the trial court in this instance and overrule the second point of error.

■ The appellant claims in his third point of error that the trial court committed reversible error in overruling the appellants motion for mistrial because the complainant told the jury that the appellant had committed ten other robberies. During the defense counsel's cross examination of the complainant, he asked her if she had spoken with other named people who were the complainants in other aggravated robbery cases pending against the appellant. She did not know the people by name as the defense counsel referred to them, but she did state that she had spoken to ten other people who had been robbed. The defense counsel then approached the bench and requested a mistrial. This was denied, but the court did instruct the witness to refrain from mentioning other offenses with which the appellant was charged. The record reflects that the appellant did not move to strike the complainant's answer, nor did he request an instruction to the jury to disregard the answer. Later, evidence was introduced of the appellant's indictment for other robberies, and witnesses to the other robberies testified in the trial below on the issue of identity.

From the outset, we must note that the appellant did not properly preserve error when objecting to the introduction of evidence. To preserve error, you must 1) make an objection, 2) request an instruction to disregard, and 3) move for a mistrial. *Coe v. State*, 683 S.W.2d 431 (Tex.Crim. App.1984); *Melancon v. State*, 690 S.W.2d

78 (Tex.App.—Houston [14th Dist.] 1985, no pet.). The appellant did not make an objection to the complainant's statement, and did not ask the trial court to instruct the jury to disregard the statement. Defense counsel disregarded the rules on preserving error. *Penry v. State*, 691 S.W.2d 636, 649–50 (Tex.Crim.App.1985) *cert. denied* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986). Even if properly preserved, we find that the error would be harmless, as properly introduced evidence of the other robberies came in later. *Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex. Crim.App.1985); *Woolls v. State*, 665 S.W.2d 455 (Tex.Crim.App.1983), *cert, denied, stay denied*, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 889 (1984); *Withers v. State*, 642 S.W.2d 486 (Tex.Crim.App.1982); *Carr v. State*, 726 S.W.2d 608, 610 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). Therefore, the third point of error is overruled.

■ In the fourth, fifth, and sixth points of error the appellant alleges the trial court erred in permitting the State to introduce evidence of three other extraneous aggravated robbery offenses over the appellant's objection. The extraneous offenses came in after the complainant was impeached on her identification of the appellant, by suggesting that the complainant was not accurate in her estimation of the robber's height, did not accurately describe facial scars, did not identify his voice, and did not know the color of his eyes. Her height and age description of the appellant was further impeached during cross-examination of the officer who took the description from the complainant after the robbery.

Evidence of collateral crimes is admissible when the identification of the defendant is contested. *Castillo v. State*, 739 S.W.2d 280 (Tex.Crim.App.1987), *appeal dism'd, cert. denied*, 487 U.S. 1228, 108 S.Ct. 2889, 101 L.Ed.2d 924 (1988); *Kowey v. State*, 751 S.W.2d 587 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). Furthermore, when the identity of the defendant is in issue, and the extraneous offenses share common characteristics with the offense charged,

evidence of an extraneous offense is admissible. *Cobb v. State,* 503 S.W.2d 249, 251 (Tex.Crim.App.1973); *Kowey,* 751 S.W.2d at 587. By impeaching the complainant's testimony regarding her description of the appellant and her memory of the robbery, and by undermining the reliability of the photospread from which she identified the appellant, defense counsel brought the identification of the appellant into issue. Therefore, the extraneous offenses were properly admitted into evidence and the fourth, fifth, and sixth points of error are overruled.

The seventh point of error asserts that the trial court erred in overruling the appellant's objection to the State arguing during closing argument that the appellant did not look like the FBI's suspect, where the name and description of the suspect was never placed in evidence. The record reflects that there was no evidence admitted concerning the identifying features of the FBI's suspect. The prosecutor in closing argument provided a physical description of the FBI's suspect, arguing that he in no way resembled the appellant. This was clearly outside the record and the appellant's objection should have been sustained. The jury should have been instructed to disregard the prosecutor's description of the other man. The State's argument did not fall within the areas of permissible jury argument, those being: 1) summation of the evidence; 2) reasonable deductions from the evidence; 3) answer to argument of opposing counsel; or 4) plea for law enforcement. *Albiar v. State,* 739 S.W.2d 360, 362 (Tex.Crim.App.1987). This constituted error because facts not supported by the record were interjected in argument. However, the error is not reversible unless there is a reasonable possibility that the argument complained of might have contributed to the conviction or the punishment assessed. *Allridge v. State,* 762 S.W.2d 146 (Tex.Crim.App.1988), *stay denied,* —— U.S. ——, 109 S.Ct. 835, 102 L.Ed.2d 968 (1989), *cert. denied,* —— U.S. ——, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989).

This court's burden upon determining that there was error in the jury argument is to decide whether an improper verdict was rendered as a result of those remarks. We must view the record as a whole to see if the argument is extreme, manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceedings. *McKay v. State,* 707 S.W.2d 23, 38 (Tex. Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Todd v. State,* 598 S.W.2d 286, 297 (Tex.Crim. App.1980).

Tex.R.App.P. 81(b)(2) provides the standard this court should follow in deciding whether a judgment of a criminal case should be reversed once it has been determined that an error was made at the trial court level. That rule states:

> *Criminal Cases.* If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, *unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.* (emphasis added).

In addition, a recent case from the Court of Criminal Appeals has given further guidance in the appellate analysis for harmless error. *Harris v. State,* 790 S.W.2d 568 (Tex.Crim.App.1989). When analyzing the effect of an error, the reviewing court should not focus on the propriety of the outcome of the trial but should be concerned with the integrity of the process leading to the conviction. First, the court should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Second, the court should consider how much weight a juror would probably place on the error. Third, the court must determine whether declaring the error harmless would encourage the State to repeat it with impunity. Finally, the court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the

jurors' decision; it should not ask if the jury reached the correct result, but whether the jurors were able to properly apply the law to the facts in reaching their verdict. The procedure used by the reviewing court should 1) isolate the error and all of its effects, using the above considerations and any other considerations deemed necessary by virtue of the facts of each individual case, and 2) ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted.

 In following this analysis, we find beyond a reasonable doubt that the error did not contribute to the conviction or the punishment of the appellant. We have examined the prosecutor's description of the FBI's suspect in the jury argument. It was emphasized somewhat strongly by the prosecutor and was intended to direct the jury in its deliberations regarding the mistaken identity defense.

However, in the second stage of the analysis, we have determined that a juror probably would not place much weight on the error, in light of the strength of the evidence of the extraneous offenses in regard to identity and the weakness of the defense as it was presented. Although the complainant's testimony was challenged by the defense, the appellant was identified by the complainant in court as well as from a previous photospread. The extraneous offenses testimony of other witnesses also provided positive identifications of the appellant as the perpetrator of similar robberies during the same time frame in the Houston area. In addition, a dealer tag with the appellant's name on it from the car dealership where the appellant was employed was recovered after it had blown off the getaway car in one of the extraneous robberies.

In contrast, the appellant's defense did not provide much to convince the jury that this was a case of mistaken identity. Only the testimony of his girlfriend and another acquaintance indicated that there was a visit by FBI agents with photographs of some other robbery suspect who looked like the appellant. The record reflects that no photographs of this other suspect were introduced, and no FBI investigators testified. Therefore, we find beyond a reasonable doubt that the prosecutor's comments in no way contributed to the jury's decision to convict the appellant of the robbery or their decision to sentence him to 99 years.

As to the third factor to be considered under *Harris*, we think that the declaration of this as harmless error would not encourage the State to repeat it with impunity. Had not the facts and the evidence of the extraneous offenses been as they were, the prosecutor's description in closing arguments would clearly have constituted reversible error. We do not think that the State would make a practice of using clearly erroneous argument under the threat of certain reversal of the conviction.

Finally, in focusing on the issue of whether this description by the prosecutor might possibly have prejudiced the jurors' decision by preventing them from being able to properly apply the law to the facts in reaching their verdict, we are convinced beyond a reasonable doubt that this did not occur. We have isolated the error and its effects and have determined that a rational trier of fact would not have reached a different result if the error had not been made. The seventh point of error is overruled.

 The appellant complains in the eighth point of error that the trial court committed reversible error in overruling the appellant's objection to the state's comment in jury argument on the appellant's failure to call the FBI agents into court to corroborate the appellant's mistaken identity defense. We find in the record repeated references by the appellant to the alleged FBI investigation of some bank robberies in Dallas. The defense counsel discussed the FBI investigation extensively in his own closing argument and insinuated that it was the State's responsibility to call the FBI agents in to testify. The State responded that the appellant had the power to subpoena witnesses from the FBI but failed to do so. This was a proper comment during final argument on the appellant's failure to call competent and material

witnesses to testify on his behalf. *O'Bryan v. State*, 591 S.W.2d 464, 479 (Tex.Crim.App.1979), *cert. denied*, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 846 (1980); *Jones v. State*, 715 S.W.2d 778, 780 (Tex. App.—Houston [14th Dist.] 1986, no pet.). It was also proper for the State to respond to the appellant's contention that the State should have brought the FBI agents in to testify. *Albiar*, 739 S.W.2d at 362; *Morelos v. State*, 772 S.W.2d 497 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). Therefore, the eighth point of error is overruled.

■ In the final point of error, the appellant contends that the trial court committed reversible error in overruling the objection to the state's continued argument that the appellant could have brought the FBI agents into court to corroborate his mistaken identity defense. The appellant in this point of error is referring to the comment by the prosecutor that the testimony of the appellant's girlfriend that the picture shown to her by the FBI resembled the appellant should not be afforded much credibility because she had a personal interest in the outcome of the case. We find that this was merely a comment on reasonable deductions from the evidence of the girlfriend's testimony. This is a proper area of jury argument. *Albiar*, 739 S.W.2d at 362. The final point of error is overruled and the judgment is affirmed.

ELLIS, Justice, dissenting.

Finding myself in disagreement with the majority members of the panel, I record my respectful dissent. I would sustain appellant's point of error seven and reverse and remand for a new trial.

Appellant's conviction had its inception in an armed robbery which occurred at an Oshman's wholesale outlet in Houston, Texas at approximately 7:30 p.m. on December 7, 1984. The complainant and principal witness, Gayle Jarmon, was the Oshman's employee who was robbed when a man walked into the store, selected a pair of sunglasses, got in line at Jarmon's cash register, produced a gun and instructed Jarmon to put all her money on the counter. Jarmon complied, emptying her cash register. Officer Luna responded to the robbery report and obtained from Jarmon a description that the robber was a white male, between the age of 38 to 41, standing 5′8″ to 6′, weighing between 175 and 185 pounds, short brown hair with a mustache. On January 10, 1985, Jarmon picked appellant out from a five picture photo array.

Jarmon was the State's sole identifying witness at trial. The record reveals defense counsel aggressively impeached Jarmon's testimony on the issue of identification and also discredited the reliability of the photospread from which Jarmon identified appellant. The State concedes that Jarmon's testimony on the issue of appellant's identity was aggressively undermined by defense counsel's cross-examination. As a consequence, the State was permitted to introduce evidence of other similar crimes where the victims had identified appellant as the perpetrator.

During his case-in-chief, appellant asserted the defense of mistaken identity. In support of his theory, appellant introduced evidence that the FBI had been looking for a suspect in a Dallas, Texas bank robbery similar in appearance to him. Peggy Ballard, appellant's girlfriend, testified that appellant regularly left Houston and traveled to Tyler, Texas to spend the weekends with her. On December 13, 1984, six FBI agents pulled Ballard off the road in Tyler. The agents then staked out Ballard's apartment for three consecutive days believing appellant would arrive there. The agents told Ballard they were going to arrest appellant for the Dallas robbery. Agents George Kieny and Steve Thompson showed Ballard six photographs taken from two separate Dallas bank robberies, requesting her to identify the person in the photographs. She testified the person depicted in the photographs looked very much like appellant but was not he. In preparation for appellant's trial, Ballard phoned agent Kieny to ask him for the six photographs, but she was told that another agent in Dallas had the photographs; Ballard made subsequent attempts to obtain the photographs from the FBI but was told the Dallas office was disorganized.

Lois Anderson, an acquaintance of appellant, was present when the FBI was conducting their surveillance of Ballard's apartment. She, too, was shown pictures of the Dallas robbery suspect and testified that the suspect looked similar to, but was not, appellant.

In his seventh point of error, appellant complains the trial court committed reversible error in overruling his objection to the State's argument at the guilt or innocence phase of the trial that appellant did not look like the suspect the FBI were looking for, where the name and description of the suspect was never placed in evidence. The trial court erred in overruling appellant's objection.

Appellant's complaint arises from the exchange which occurred between the prosecutor and Officer Alsbrooks during the defense's case-in-chief. Throughout the case, defense counsel referred to a suspect whom the FBI was allegedly investigating in connection with several Dallas bank robberies. Appellant contended that this suspect resembled appellant in appearance and that this other suspect was the perpetrator of the Oshman's robbery for which appellant was on trial. Alsbrooks was a police officer involved in the investigation of the Oshman's robbery. The questions posed by the prosecutor on re-cross examination contained information concerning a man named Kenneth Wayne Holmes. The exchange reads as follows:

PROSECUTOR: Are you aware that Kenneth Wayne Holmes pled guilty to bank robbery in Dallas that Mr. Leidtke [Defense Counsel] talked about?

A: Yes, sir.

PROSECUTOR: Aware that Mr. Homes is six feet tall, two hundred pounds and has gray and black hair?

A: *No, I didn't know that either.*

PROSECUTOR: Are you also aware he gave a confession stating he has never been in Houston?

A: No, I am not aware of that.

Alsbrooks responded clearly and unequivocally in the negative to the description of Kenneth Wayne Holmes provided by the prosecutor. Accordingly, there is no evidence in the record concerning the identifying features of Kenneth Wayne Holmes.

Permissible jury argument falls within one of four general areas: 1) summation of the evidence; 2) reasonable deductions from the evidence; 3) answer to argument of opposing counsel; and 4) plea for law enforcement. *Albiar v. State,* 739 S.W.2d 360, 362 (Tex.Crim.App.1987). Even if argument exceeds the bounds of proper jury argument, it is not reversible error unless, in light of the record as a whole, the argument is extreme, manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceedings. *Todd v. State,* 598 S.W.2d 286, 297 (Tex.Crim.App.1980); *McKay v. State,* 707 S.W.2d 23, 38 (Tex. Crim.App.1985), cert. denied, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

In jury argument during the guilt/innocence phase, both defense counsel and the prosecutor referred to certain identifying features of Kenneth Wayne Holmes. The State claims that its own recitations of specific identifying features of Kenneth Wayne Holmes were in response to the same information originating from the defense. The record reveals otherwise.

During the guilt/innocence phase, defense counsel and the prosecutor argued in pertinent part as follows:

DEFENSE COUNSEL: Ask yourself why is she doing that. Ms. Derbyshire (Prosecutor) even knows the individual that we tried to bring before you. She provided the name. We were so convinced that this would be a plausible theory if we just got the information from the FBI agents that we could put it before you. Ms. Derbyshire provided the name. Ms. Derbyshire tells you, yes, there is a Kenneth Wayne Holmes, and Ms. Derbyshire then says that he is the guy who has charcoal gray hair and is six feet two. Well, if Ms. Derbyshire is so convinced that we are so wet and our theory so implausible, then why didn't she bring him to you? How does she have the audacity to stand before you objecting to relevance of our investiga-

tion and during the course of that objection she tells you he has charcoal gray hair? Well, heck, why don't you just give us a picture? That is all we are saying, that there was a woman who thought it was Christopher Parker. There were agents trained, thought it was Christopher Parker.

PROSECUTOR: Objection. That is outside the record.

COURT: Sustained.

\* \* \* \* \* \*

PROSECUTOR'S CLOSING ARGUMENT

PROSECUTOR: ... Now this is another interesting thing. This man wants you to believe something about these look-alike robberies. *Kenneth Wayne Homes is six two with gray hair. Look at Christopher Parker. Is he anywhere near that description?*

DEFENSE COUNSEL: She is arguing outside the record.

COURT: Overruled.

\* \* \* \* \* \*

PROSECUTOR: Peggy Ballard tells you how she met these FBI agents. Tells you how these pictures resemble Christopher Parker. Well, we know that is not true. Christopher Parker is five-seven to five-eight with blonde, brown hair. *Kenneth Holmes is 6'2" with gray hair.*

DEFENSE COUNSEL: Objection. Outside the record. She trying to get her identification of Kenneth Wayne Holmes even if he is the same guy in. It's unfair and we object.

THE COURT: Overruled.

The actual argument originating from defense counsel was that the State did not subpoena FBI agents to refute the testimony of defense witness, Peggy Ballard. Ballard testified the FBI was investigating appellant in connection with armed robberies of Dallas banks. Ballard further testified that the FBI provided her with six photographs which depicted the robbery suspect who looked very similar to but was not appellant.

Defense counsel was not acknowledging the description of Kenneth Wayne Holmes

provided by the State. Quite the reverse. Defense counsel was commenting on the obvious incongruity of, on the one hand, the State's objection to defense counsel's reference to the FBI investigation and, on the other hand, the State's description of the robbery suspect ultimately apprehended in connection with that very same FBI investigation.

Viewed in the context of defense counsel's actual argument, the State's description of Holmes was not responsive to defense counsel's comment on the State's failure to subpoena the FBI pictures shown to Peggy Ballard. Nor does the State's argument fall within the remaining areas of permissible jury argument, that is, summation of or reasonable deductions from evidence or a plea for law enforcement. *Todd v. State*, 598 at 297; *McKay v. State*, 707 at 38.

There was no evidence in the record that Holmes was 6'2" weighing 200 pounds and sporting charcoal gray hair. Defense counsel's objection to the prosecutor's descriptions as being outside the record was valid. Even the State conceded to this Court, at oral argument, that the prosecutor's descriptions of Holmes were outside the record. When it overruled defense counsel's objection, the trial court placed its seal of approval on the identifying features of Holmes improperly placed before the jury.

Error exists when facts not supported by the record are interjected in argument, but such error is not reversible unless there is a reasonable possibility that the argument complained of might have contributed to the conviction or the punishment assessed. *Allridge v. State*, 762 S.W.2d 146 (Tex. Crim.App.1988) stay denied —— U.S. ——, 109 S.Ct. 835, 102 L.Ed.2d 968 and —— U.S. ——, 109 S.Ct. 1176, 103 L.Ed.2d 238; TEX. R.APP.P. 81(b)(2).

I have analyzed the court's error to determine whether or not it was harmful pursuant to TEX.R.APP.P. 81(b)(2) and I have applied the standards for evaluation of harm enunciated in *Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App.1989). I am not persuaded beyond a reasonable doubt that the error did not contribute to appellant's

conviction or punishment. The impropriety of the prosecutor's specific description of Holmes and its attendant harm to appellant are manifest. The State virtually telegraphed to the jury: (1) that the prosecutor had inside information as to the identity of Kenneth Wayne Holmes, the robbery suspect ultimately apprehended by the FBI's investigation; and (2) Kenneth Wayne Holmes did not remotely resemble appellant in appearance.

In summary, Peggy Ballard and Lois Anderson testified that the Dallas robbery suspect, depicted in the six FBI photographs, looked very similar to, but was not, appellant. The State then asserted *as a fact* that the Dallas robbery suspect did not even come close to fitting appellant's description. The State effectively sabotaged appellant's defense of mistaken identity based upon information totally outside the record. In light of the record as a whole, the prosecutor's description of Holmes was manifestly improper and injected new facts harmful to appellant in the trial below.

It is further noted that the single piece of direct evidence connecting appellant to the Oshman's robbery was Gayle Jarmon's testimony which was successfully impeached at trial. The jury subsequently assessed appellant's punishment for the Oshman's robbery at confinement for ninety-nine years. These facts, coupled with my review of the entire record, do not persuade me beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. TEX.R. APP.P. 81(b)(2).

I would sustain appellant's seventh point of error and remand the case to the trial court for a new trial.