Affirmed and Memorandum Opinion filed March 28, 2006









Affirmed
and Memorandum Opinion filed March 28, 2006.

 




 
 
 
 
 
 
 




 

 

 

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00773-CR

NO.
14-04-00774-CR

NO. 14-04-00775-CR

____________

 

EARNEST DILLARD
THOMAS,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th
District Court

Harris County, Texas

Trial Court Cause Nos. 963,573;
963,574; and 963,575

 



 

M E M O R A N D U M   O P I N I O N








Appellant, Earnest Dillard Thomas, was
charged in three separate indictments with one incident of aggravated sexual
assault of a child and two incidents of sexual assault of a child.  The cases were consolidated and tried
together.  A jury found appellant guilty
on all charges and assessed punishment at one 55-year and two 20-year
concurrent sentences, and a $10,000 fine. 
Appellant challenges each conviction in four points of error, arguing:
(1) the trial court committed reversible error by failing to suppress his
written statement, (2) the trial court erred in failing to instruct the jury it
could disregard the statement if it found the statement was made involuntarily,
(3) the evidence is legally insufficient to support the convictions, and (4)
the evidence is factually insufficient to support the convictions.  We affirm.

Appellant and his second wife, Everlyn,
adopted V.T. when she was two years old. 
Appellant started molesting V.T. when she was six or seven by going into
her room, touching her genitals, and telling her not to tell her mother.  The abuse escalated when appellant, V.T., and
two of her brothers moved to another town just as V.T. was turning eight years
old.  Everlyn did not go with the family due to a
previous job commitment.  V.T.=s room was next to
appellant=s at the back of the house and her
brothers shared a room near the front of the house.  The routine abuse would typically begin by
appellant entering V.T.=s room at night, waking her, and telling
her to Acome on.@  According to V.T., appellant would then take
her to his bedroom, undress her, put her on the bed, and come Aup between [her]
legs with his clothes off.@  Appellant would rub his penis on V.T.=s genitals without
penetrating her vagina until he ejaculated. 
This happened two or three times a week during the year they lived at
this address.

The family (including Everlyn) moved to
Houston when V.T. was almost nine years old. 
Thereafter, the family moved twice more within a couple of years.  In two of the homes, V.T.=s room was next to
the master bedroom.  The abuse continued,
except that it now occurred during the day, when Everlyn left the house (V.T.=s brothers were
usually home when the abuse occurred, but either outside or in the living
room).  Appellant would escort V.T. from
her room to the master bedroom.  On most
occasions, V.T. cooperated without physical resistance, but sometimes she
struggled.  Appellant would sexually
abuse her on the bed or on the floor to the side of the bed.  V.T. testified that when appellant was
finished, he would wipe off a white substance on her stomach.  Appellant usually kept a small washcloth
nearby for this purpose.








When V.T. was ten or eleven, appellant
started to force V.T. to touch his penis with her hand and to perform
fellatio.  The first time it happened,
appellant drove V.T. to a dead end street a couple of blocks from their
home.  He took his penis out of his
pants, put her hand on it, then Apushed [her] head
down on it.@ 
Only Ararely@ would he
ejaculate during this type of abuse. 
Appellant never wore a condom when he abused his daughter, and V.T. was
able to accurately describe his penis in great detail, including the presence
of genital warts.

On or about September 1, 2000, when V.T.
was thirteen, Everlyn left the house while V.T.=s brothers were
outside mowing the lawn.  Appellant went
to V.T.=s room and told
her to Acome on.@  He took her to his room, took her shorts and
underwear off, told her to lay on her stomach. 
He penetrated her anus with his penis. 
Even though V.T. was crying and yelling Astop,@ he continued his
attempt to penetrate farther for a couple of minutes before he stopped.  V.T. got up, put her clothes on, went to the
bathroom and locked the door.

As time went on, the abuse continued to
escalate.  When V.T. was 13 or 14 years
old, appellant began inserting his penis inside V.T.=s vagina.[1]  The first such incident occurred when Everlyn
left the house while V.T. was cleaning the kitchen.  Appellant took V.T. to his room, had her sit
on the floor and said something like Ait is time.@  He then partly penetrated her vagina with his
penis.  V.T. said that it hurt as he did
this, she wanted to cry, and she felt Aused.@  On that occasion, he stopped after a few
minutes without ejaculating.

Later, on or about June 24, 2003,
appellant entered V.T.=s room and sat down on the chair at the
foot of her bed.  He pushed V.T.=s head down until
her mouth was Aon@ his penis.








V.T. did not tell anyone about the abuse
for ten years because appellant told her she would be Asent back where he
got [her] and that [her] sisters would look at [her] different [sic].@  Appellant also attempted to coerce V.T. by
threatening to tell Everlyn about their relationship if she did not
cooperate.  Although V.T. was embarrassed
by the abuse, she nevertheless told appellant, on one occasion, to tell Everlyn
about the sexual activity.  Appellant
left the room and returned with a video camera. 
He showed V.T. a recording he had secretly made of the sexual
abuse.  Appellant threatened to show it
to Everlyn.  V.T. felt hurt, confused,
and embarrassed when she saw the tape.[2]

Eventually, V.T. disclosed the abuse to
Everlyn while appellant was at work. 
Although she became angry, Everlyn did not report the abuse to
authorities.  Instead, V.T. was sent to
live with her sister in Austin.  While in
Austin, V.T. reported the abuse to Children=s Protective
Services (ACPS@).  In a subsequent follow-up investigation, a
CPS caseworker tried to contact Everlyn by telephone.  On the first occasion, Everlyn answered the
phone, but denied her identity and said Everlyn was not at home.  When the caseworker called again, Everlyn spoke
with the caseworker and agreed to bring V.T. to the Children=s Assessment
Center (ACAC@).

At the CAC, V.T. was interviewed about the
abuse and the caseworker reported some of the details to Everlyn.  Everlyn testified she became hysterical when
she heard what V.T. had reported. 
Everlyn then spoke with a detective and signed a written statement.[3]  She admitted to police that she had noticed
appellant was Aobsessive@ in regard to
V.T., and that he always wanted to do everything for the girl.  Everlyn further acknowledged that V.T. told
her she had been improperly touched by appellant.  However, Everlyn suggested that V.T.=s description of
appellant=s genital warts might have been due to an
accidental glimpse of appellant when he was lying naked on the bed.








V.T.=s medical exam at
the CAC was normal.  The exam neither
supported nor refuted sexual abuse. 
Although the doctor who examined V.T. testified it was not unusual for
there to be no rips or tears in a child=s hymen,
especially several months after the abuse (the abuse ended in early or
mid-July; the exam was in late September), Everlyn believed from these results
that V.T. was still a virgin, and had not been abused.

Motion to
Suppress

In his first point of error, appellant
contends the trial court committed reversible error by refusing to suppress his
written statement.  He asserts the
statement was involuntary due to coercion.[4]

We review a trial court=s ruling on a
motion to suppress evidence for an abuse of discretion.  State v. 
Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  At a suppression hearing, the trial court is
the exclusive trier of fact and judge of witness credibility and the weight to
be given to testimony.  Villarreal
v.  State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996).  We view the evidence
and all reasonable inferences therefrom in the light most favorable to the
trial court's ruling, and will sustain the ruling if it is reasonably supported
by the record and is correct on any theory of law applicable to the case.  Id. 
We generally consider only the evidence adduced at the suppression
hearing.  Rachal v.  State, 917 S.W.2d 799, 809 (Tex. Crim.
App. 1996).  We review de novo the
application of law to facts.  Carmouche
v. State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

The statement of an accused may be used in
evidence if it was freely and voluntarily made, without compulsion or
persuasion.  Tex.  Code Crim.  Proc. 
Ann.  Art.  38.21 (Vernon 2005).  The test is whether the defendant's will was Aoverborne@ by police
coercion.  Mason v. State, 116
S.W.3d 248, 257 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref'd).  In making this
determination, we look to the totality of circumstances surrounding a statement=s
acquisition.  Penry v.  State, 903 S.W.2d 715, 744 (Tex. Crim.
App. 1995).








The only witness at the motion to suppress
hearing was the detective who obtained appellant=s statement.  He testified that he received a referral to
investigate alleged child abuse from CPS on September 24, 2003.  On September 29, 2003, appellant came to the
CAC to speak with a CPS caseworker.  The
detective was informed of appellant=s presence, and he
went to the CAC conference room where appellant and the caseworker were
speaking.  He introduced himself and said
he would like to speak with appellant. 
He informed appellant that he was not under arrest, and that his
presence there was voluntary.  Appellant
appeared to understand and did not appear to be under the influence of drugs or
alcohol.  The detective asked the
caseworker to leave the room, and the interview lasted about an hour, during
which they walked to the detective=s office.  The detective typed a written statement that
appellant reviewed, corrected, and signed.[5]  Appellant was never read his statutory
warnings.  Appellant left the CAC after
making the statement and was not arrested until October 7, 2003.

The record of the motion to suppress
hearing reveals appellant was told he was free to leave, and free to terminate
the interview at any time.  There was no
need for the detective to read appellant his statutory warnings because
appellant was not in custody.  See Tex. Code Crim. Proc. Ann. art. 38.22, ' 2 (Vernon
2005).  There is no evidence that
appellant=s interview was not handled in a
professional and courteous manner, much less that appellant was coerced.  See Mason, 116 S.W.3d at 257 (finding
confession not coerced where appellant came voluntarily to police station, left
immediately after giving statement, interview lasted two hours, appellant had a
break and a drink, and never requested an attorney).  Appellant=s argument that
the detective=s Amethod@ of taking
appellant away from his conversation with a CPS caseworker was Ainherently
coercive@ lacks any basis
in law or fact.  The trial court did not
abuse its discretion in refusing to suppress appellant=s written
statement.  We overrule appellant=s first point of
error.








Failure to Instruct the Jury on Voluntariness of Statement

Appellant next
argues the trial court committed reversible error in failing to instruct
jurors, under section 6, article 38.22 of the Texas Code of Criminal Procedure,
that they could disregard appellant=s written
statement if they found it was involuntarily rendered.[6]  Appellant argues the detective=s testimony can be
construed in such a light that the statement was rendered under coercive
circumstances.  He also argues he was
entitled to the instruction as Aa defensive issue
raised by the evidence.@

Articles 38.23 and 38.22 of the Code of
Criminal Procedure mandate that the jury Ashall@ be instructed not
to consider certain evidence admitted at trial unless it believes beyond a
reasonable doubt the evidence was obtained in accordance with the law.  See Tex.
Code Crim. Proc. Ann. arts. 38.22, ' 6, 38.23.  Despite this mandate, a trial judge does not
err by failing to submit such jury instruction if there is no factual dispute
over how the evidence was obtained.  See
Garza v. State, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (noting that an
article 38.23 instruction must only be included in jury charge if there is a
factual dispute about how evidence was obtained); Butler v. State, 872
S.W.2d 227, 236 (Tex. Crim. App. 1994) (explaining that before the requested
instruction under article 38.22, section 7, is required, some evidence must be
presented to the jury raising the issue of voluntariness).  A fact issue about whether evidence was
legally obtained may be raised Afrom any source,
and the evidence may be strong, weak, contradicted, unimpeached, or
unbelievable.@  Id.
(quoting Wilkerson v. State, 933 S.W.2d 276, 280 (Tex. App.CHouston [1st
Dist.] 1996, pet. ref=d).

The detective, who was the sole witness regarding the
voluntary nature of appellant=s statement during
the guilt/innocence phase of trial, testified on cross-examination as follows:








Q.      . . . you=re saying that [appellant] wasn=t under arrest?

A.      Yes,
sir.  I told him that he was there on a
voluntary basis.  That anything B that regardless of what he told me
that day he was going to be free to go at the end of it.

Q.      So you promised him something?

A.      His
freedom.  That he=s going to be free to leave when we
got through with the interview.

*  *  *

Q.      Did
you tell him that he had the right to terminate the interview at any time?

A.      Yes, sir.

Q.      Why
didn=t [sic] you tell him he had a right
to terminate an interview?

A.      Because
it was a voluntary interview and he was not required to be there.

The detective further testified that appellant was
free to leave Aat any time,@ he never asked to
use the phone or bathroom or to speak with anyone, and he cooperated with the
detective.

We cannot infer coercion from mere
cooperation.  There is no evidence
contradicting the detective=s testimony and,
therefore, no factual dispute to justify requiring the trial court to instruct
the jury on voluntariness.  See Garza, 126 S.W.3d at 86B87 (finding appellant raised no fact
issue at trial to require 38.23 jury instruction when his testimony did not
differ significantly from that of police officers, and that Avague suggestions@ or Amere insinuations@ by trial counsel that a fact exists,
without more, do not rise to the level of creating a fact issue).  The trial court did not err in refusing this
charge.  See Hughes v. State, 562
S.W.2d 857, 863 (Tex. Crim. App. 1978) (finding no error in refusing jury
charge when appellant did not testify or call any witness on the issue of
voluntariness and there was no evidence before the jury which raised that
issue).  We overrule appellant=s second point of
error.








Sufficiency of the Evidence

In his final
points of error, appellant challenges the legal and factual sufficiency of the
evidence supporting each of his convictions. 
Specifically, he complains the evidence is insufficient because V.T.=s testimony was
uncorroborated.

We view the legal sufficiency of evidence
supporting a conviction in a light most favorable to the verdict, and determine
whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319 n.12 (1979); Wilson v. State, 7
S.W.3d 136, 141 (Tex. Crim. App. 1999). 
In conducting this review, we do not engage in a second evaluation of
the weight and credibility of the evidence, but only ensure that the jury
reached a rational decision.  Muniz v.
State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

Defendant=s convictions
under Texas Penal Code sections 22.011 (sexual assault) and 22.021 (aggravated
sexual assault) are supportable on V.T.=s uncorroborated
testimony because, at the time of the alleged offenses, V.T. was less than
eighteen years old.  Tex. Code Crim. Proc. Ann. art. 38.07(a),
(b)(1) (Vernon 2005).  The State had the
burden of proving the following beyond a reasonable doubt:

1.                 
That, on or about September 1, 2000, appellant
intentionally and knowingly caused the penetration of V.T.=s anus by placing his sexual organ in
V.T.=s anus
when V.T. was younger than fourteen years old and not appellant=s spouse, and

2.                 
that, on or about May 24, 2003, appellant intentionally
and knowingly caused the penetration of V.T.=s
female sexual organ with his sexual organ when V.T. was younger than seventeen
years old and not his spouse, and 

3.                 
that, on or about June 24, 2003, by intentionally and
knowingly causing V.T.=s
mouth to contact his sexual organ when she was younger than seventeen years old
an not his spouse.








We have already discussed V.T.=s testimony about each of these
occurrences in great detail.  We find her
testimony, alone, provides legally sufficient evidence to support each of
appellant=s three
convictions.  Jensen v. State, 66
S.W.3d 528,
534 (Tex. App.CHouston
[14th Dist.]
2002, pet. ref=d); Ruiz v. State, 891 S.W.2d 302, 304 (Tex.
App.CSan
Antonio
1994, pet. ref=d).

In a factual sufficiency review, there is
only one question:  AConsidering all evidence in a neutral
light, was a jury rationally justified in finding guilt beyond a reasonable
doubt?@  Zuniga v. State, 144 S.W.3d 477, 484B85 (Tex. Crim.
App. 2004).  There are two ways the
evidence may be factually insufficient: (1) evidence supporting the verdict,
considered alone, may be too weak to support a finding of guilt beyond a
reasonable doubt or (2) there may be evidence both supporting and contrary to
the verdict but the contrary evidence is so significant that guilt beyond a
reasonable doubt could not have been found at trial.  Id. 
We find V.T.=s testimony alone is not too weak to
support a finding of guilt beyond a reasonable doubt.  We further find that the contrary evidence is
not so significant that guilt beyond a reasonable doubt could not have been
found by the jury.  Accordingly, we find
the jury was rationally justified, after considering all the evidence in a
neutral light, in finding appellant guilty beyond any reasonable doubt.

  We
overrule appellant=s third point of error, and appellant=s convictions are
affirmed.

 

 

 

 

 

/s/      J.
Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed March 28, 2006.

Panel
consists of Justices Hudson, Frost, and Seymore.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  Everlyn
testified she was bedridden for six months after a car accident in July of
2000, and that she could only leave the house with help during this time.  She was unemployed from January of 2002,
until after V.T. reported the abuse.  Her
testimony wavered from being Aalways home@ from
July of 2000, until the abuse was reported to being AJust about always home.@  She said she never left V.T. alone with
appellant because V.T.=s brothers were also home, an account that is
consistent with V.T.=s report.





[2]  In a search of
appellant=s home, police discovered a camcorder.  However, no video tapes were found.  The police did discover several bottles of
wart medication amongst appellant=s belongings; Everlyn confirmed that appellant used the
medication to treat his genital warts.





[3]  Everlyn
admitted she reviewed, signed, and initialed each paragraph of her written
statement.  She complained at trial that
two words in the statement (Aobsessive@ and Asuck@) were not words she used.





[4]  Appellant
argued to the trial court at the Jackson/Denno hearing that the
statement was made while he was in custody. 
The trial court found otherwise. 
Appellant does not challenge this finding on appeal.





[5]  Appellant
admitted in this statement that he and V.T. were Asexually
active.@





[6]  The State
argues appellant has waived this issue on appeal by asking for a Texas Criminal
Code of Procedure article 38.23 instruction at trial, rather than one under
article 38.22.  Whether appellant
properly preserved any jury charge error is relevant only if we find error
actually occurred.  See Thomas v.
State, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986) (explaining failure to
object at trial normally preserves nothing for review, but where jury charge
error is first raised on appeal, it will be considered Aunder a more exacting harm analysis if error is found.@).  We must,
therefore, determine whether there was any error.