**Joe Bob KOWEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–87–00267–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 5, 1988.

Sandra K. Daniel, Houston, for appellant.

John B. Holmes, Jr., Barbara Budros, Houston, for appellee.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

On motion of the State the opinion issued on March 31, 1988, is withdrawn and this substitute opinion is issued.

Joe Bob Kowey appeals a conviction for aggravated sexual assault. Appellant pled not guilty. The jury found appellant guilty. The trial court sentenced him to life imprisonment.

Appellant brings seven points of error asserting that the trial court erred in (1) denying his motion to dismiss the indictment based on the state's failure to comply with Tex.Code Crim.Proc.Ann. art. 32A.02 (Vernon Supp.1987); (2) denying his motion to dismiss the indictment based on the denial of his right to a speedy trial; (3) admitting the testimony of F ... S ... regarding an extraneous offense because the testimony did not assist the jury in resolving any contested issue; (4) admitting the testimony of F ... S ... regarding an extraneous offense because the probative value of the testimony was outweighed by its prejudicial effect; (5) admitting the testimony of E ... R ... regarding an extraneous offense because the testimony did not assist the jury in resolving any contested issue; (6) admitting the testimony of E ... R ... regarding an extraneous offense because the probative value of the testimony was

outweighed by its prejudicial effect and (7) the evidence was insufficient to prove that complainant was in fear that death would be imminently inflicted on her. We affirm.

On the afternoon of September 7, 1984, Joe Bob Kowey telephoned the complainant, a female Houston realtor, and asked if he could view a vacant house in the Spring Branch area. Appellant, using the alias of "Don Rice", said that he and his wife were looking for a house in that area and had seen complainant's real estate sign on the property. Complainant agreed to meet appellant at the house that afternoon. After complainant showed appellant the interior of the house, appellant thanked her and left.

Appellant telephoned complainant later that same day and asked to view another vacant house. Complainant agreed to meet him at the second house that afternoon. Appellant drove up to the house and parked directly behind complainant's car. When appellant arrived, he briskly walked into the house without speaking to complainant. Complainant was about to turn on one of the bathroom lights when appellant slammed complainant into the wall and held her against the wall with his body. Appellant made a demand for money while he twisted complainant's right arm behind her back and placed his hand over her mouth. Appellant proceeded to tie complainant's hands behind her back and blindfold her. When complainant told appellant she had no money, appellant stated that he would take her jewelry. After appellant took her jewelry, he guided complainant to an area of the house where a portable bed was located and laid her down on the bed. Appellant removed complainant's pants, underwear and shoes from her body and then put a pair of panty hose on her. Appellant tore the crotch out of the panty hose and then placed a lubricant on complainant's vagina. Appellant did not display a weapon, verbally threaten complainant's life or inflict serious bodily injury upon her. While complainant was lying blindfolded on her back, with her hands tied behind her, appellant placed his penis in her mouth. When she began to gag, appellant removed his penis from her mouth, got on top of

complainant and had sexual intercourse with her. When appellant finished, he tied complainant's ankles together, loosened the bindings on her hands, and left the house. When complainant was certain that appellant had departed, she left the house, called the police from a nearby home and gave a statement when they arrived.

In his first point of error appellant asserts that the trial court erred in denying appellant's Motion to Dismiss because the state failed to show due diligence in obtaining appellant's presence for trial. Appellant contends the state failed to comply with Tex.Code Crim.Proc.Ann. art. 32A.02. (Vernon Supp.1987). The court of criminal appeals held in *Meshell v. State*, 739 S.W. 2d 246 (Tex.Crim.App.1987) (not yet reported) that this statute is unconstitutional. Appellant's first point of error is without merit and is overruled.

In point of error two appellant contends the trial court erred in denying his Motion to Dismiss based upon the denial of appellant's right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution. The constitutional guarantee of right to a speedy trial is an important safeguard to (1) prevent undue and oppressive incarceration prior to trial, (2) minimize anxiety and concern accompanying public accusation and (3) limit the possibilities that a long delay will impair the ability of an accused to defend himself. *Smith v. Hooey*, 393 U.S. 374, 379, 89 S.Ct. 575, 577–578, 21 L.Ed.2d 607 (1969). The length of the delay is measured from the time the defendant is formally accused or arrested. *Easley v. State*, 564 S.W.2d 742, 744 (Tex.Crim. App.1978); *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459–460, 30 L.Ed.2d 468 (1971). The approach to use to determine whether an appellant's constitutional right to a speedy trial has been violated is a balancing test analysis. The factors to be generally considered are: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right and 4) the prejudice to the defendant resulting from the delay. *Barker v.*

*Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–2192, 33 L.Ed.2d 101 (1972).

On November 10, 1986, counsel was appointed to represent appellant and appellant made his initial appearance. The case was reset, by agreement of the parties, to December 11, 1986. The state filed a written announcement of ready on November 13, 1986. After the filing of a Motion to Dismiss by defense counsel, the case was reset by agreement and heard on February 2, 1987.

The record reflects appellant was indicted in Harris County on September 6, 1985, but was not incarcerated on the charge until November 5, 1986. At the time appellant was indicted, he was being held in the Dallas County jail on unrelated charges. On July 20, 1986, appellant was convicted of an offense in Collin County and transferred to the Texas Department of Corrections. While in the Texas Department of Corrections, he returned to Dallas County for trial on the Dallas County offense. Sometime in October 1986, the Harris County District Attorney's office was notified that the Collin and Dallas County prosecutions had been completed. Appellant again returned to the Texas Department of Corrections before finally returning to Harris County on November 5, 1986. Appellant was brought to trial on the instant offense approximately one and one-half years after he was indicted.

Using the balancing test proposed by the United States Supreme Court, we must first consider the length of the delay. There is no precise length of delay which irrefutably constitutes a violation of the right to a speedy trial. *Easley v. State,* 564 S.W.2d at 744. Approximately one and one-half years elapsed from the date of appellant's indictment to the date of appellant's trial.

Secondly, we must review the reasons asserted by the state justifying the delay. The state argues that as soon as appellant's previous charges were disposed of, appellant was brought to trial in Harris County. Within one month of being transferred to the Texas Department of Corrections, a bench warrant was requested for appellant. Moreover, appellant obtained counsel within two weeks and the case was reset for trial by agreement within three months. We find the state did not deliberately attempt to delay the trial in order to hamper appellant's defense. Appellant's trial delay was occasioned in substantial part by his incarceration and his trials associated with prior offenses. That the appellant was being prosecuted on other charges constitutes a valid reason for the delay in bringing him to trial. *Easley v. State,* 564 S.W.2d at 745.

Thirdly, we must determine whether appellant timely asserted his right to a speedy trial. The record indicates that appellant filed a pro se motion asserting his right to a speedy trial on December 10, 1986. Appellant filed his speedy trial motion less than four months after he became available in Harris County, approximately one year and two months after he was indicted and less than two months before trial. We find that appellant timely asserted his right to a speedy trial.

■ The final factor to consider is whether appellant has been prejudiced by the delay. The three interests to consider in determining whether a defendant has been prejudiced are: 1) prevention of oppresive pretrial incarceration 2) minimizing anxiety and concern of the accused and 3) limiting the possibility the defense will be impaired. *Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2182. When the delay is caused by appellant's convictions in other jurisdictions, we are primarily concerned with whether or not his ability to defend himself was prejudiced by the delay. *Turner v. State,* 545 S.W.2d 133, 138 (Tex. Crim.App.1976).

Appellant argues that he was highly prejudiced by the delay in bringing him to trial because it is very probable that the duration of his sentence under the instant charge was increased by the "outstanding" cases being admitted into evidence at trial. The "outstanding cases" cited by appellant are in fact final convictions.

While it is true that appellant's trial was delayed for approximately one and one-half years, the delay resulted from appellant

being tried and incarcerated for other offenses. The record shows that appellant's attorney presented a sound defense on his behalf. Appellant has not shown that his ability to present a defense was prejudiced by the delay between indictment and trial. After considering and weighing all of these factors, we conclude that appellant was not denied his right to a speedy trial under the Sixth Amendment to the United States Constitution and Article I Section 10 of the Texas Constitution. Point of error two is overruled.

■ In point of error three appellant states that his conviction should be reversed because the evidence is insufficient to support a conviction for aggravated sexual assault. Appellant was indicted for the offense of aggravated sexual assault pursuant to Tex.Penal Code Ann. § 22.021(a)(2). In support of his argument appellant argues that his "acts and words" were not sufficient to place a reasonable person in complainant's circumstances in fear that death or serious bodily injury would be imminently inflicted on her. A person commits aggravated rape if he commits rape and "by acts or words places the victim in fear that death, serious bodily injury or kidnapping will be imminently inflicted on any person." Tex.Penal Code Ann. § 22.021(a)(2) (Vernon Supp.1987). When reviewing the sufficiency of the evidence to support a conviction, the test is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex. Crim.App.1984); *Carter v. State*, 713 S.W.2d 442, 444 (Tex.App.–Fort Worth 1986, no pet.); *Fox v. State*, 693 S.W.2d 593, 598 (Tex.App.–San Antonio 1985, no pet.). Our study of a trio of court of appeals cases, *Harris v. State*, 666 S.W.2d 537, 539 (Tex.App.–Austin 1984, no pet.); *Bank v. State*, 662 S.W.2d 627, 629 (Tex.App.–Houston [14th Dist.] 1983, pet. ref'd.); and *Seek v. State*, 646 S.W.2d 557, 560 (Tex.App.–Houston [1st Dist.] 1982, no pet.), persuades us that in deciding evidentiary attacks in aggravated rape cases, we should review all of the evidence and determine whether the "acts, words or deeds" of the actor were sufficient to place a reasonable person in complainant's circumstances in fear that death or serious bodily injury would be imminently inflicted upon her by her attacker. *Dodson v. State*, 699 S.W.2d 251, 254 (Tex.App.–Tyler 1985, no pet.). Several appellate courts have called this an objective standard of review. *Dacquisto v. State*, 721 S.W.2d 603, 604 (Tex.App.–Amarillo 1986, pet. ref'd.). During direct examination, complainant described her reaction to the assault as follows:

Question: What were you thinking at that time?

Answer: I didn't respond to him because I didn't want to agitate him. I didn't want to tell him yet that I didn't have any money.

Question: Why didn't you tell him that you didn't have any money?

Answer: Because I thought he would kill me.

\* \* \* \* \* \*

Question: Did he say anything to you when he was tying you up?

Answer: He repeated that "I want money."

Question: Had you said anything back to him?

Answer: Yes. I said, "You're not going to like this, but I don't have any money with me. I didn't bring my purse."

Question: And what was going through your mind when you told him that?

Answer: I felt he was going to stab me. I didn't think he would use a gun because of noise. But I thought—I thought I would be stabbed to death.

\* \* \* \* \* \*

Question: Did you give him consent to take your rings for any reason?

Answer: To save my life.

\* \* \* \* \* \*

Question: What was going through your mind as he was leading you to the other room?

Answer: Hoping to live. Hoping I could think of some way—you know, hoping

to be as nonagitating, nonaggressive—as passive as I could be so that I would do nothing to make this man kill me. Especially knowing that I had no money.

Question: And were you, in fact, afraid that he would kill you?

Answer: I was sure he would.

    \*    \*    \*    \*    \*    \*

Question: And you still had the blindfold on?

Answer: Yes.

Question: Did he say anything to you at all when he put you down on the bed?

Answer: I don't recall. I don't think so.

Question: And what was going through your mind at that time?

Answer: I thought I was going to be killed.

We have no difficulty in concluding from the foregoing evidence that the state carried its burden of proof. The complainant was grabbed from behind, pushed against a wall, blindfolded, bound and raped in a vacant house. Her expressed fear of injury and death were imminently reasonable under these circumstances. We hold that the state presented ample evidence from which the jury could find that appellant intentionally placed the complainant in fear that death or serious bodily injury would be imminently inflicted upon her. Point of error three is overruled.

■ In points of error four, five, six and seven appellant asserts that the trial court erred in admitting the testimony of F ... S ... and E ... R ... regarding the extraneous offenses committed by appellant because the subject matter of their testimony was already established by direct evidence and the probative value of their testimony was outweighed by its prejudicial effect. Appellant argues that since there was direct evidence that appellant was the person who assaulted complainant, and because it was not weakened by defense counsel's cross-examination, the trial court committed reversible error in admitting the testimony regarding the previous extraneous offenses.

The general rule is that an accused may not be tried for some collateral crime or for being a criminal generally. *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App. 1983). Nevertheless, evidence relevant to a controverted issue is not necessarily rendered inadmissible merely because it tends to show the commission of a separate offense. Before an extraneous offense may be admitted against a defendant, it must be shown that there is a relationship between such evidence and the evidence necessary to prove that the accused committed the crime for which he stands charged. *Sigueiros v. State*, 685 S.W.2d 68, 71 (Tex. Crim.App.1985); *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972). This relationship should consist of some distinguishing characteristic common to both the extraneous offense and the offense charged. *Siqueiros v. State*, 685 S.W.2d at 71; *Cobb v. State*, 503 S.W.2d 249, 251 (Tex.Crim.App.1973). If this test is met, and the identity of the defendant is in issue, an extraneous offense is admissible to prove identity. *Cobb v. State*, 503 S.W. 2d at 251–252.

During the cross-examination of complainant, the attorney for appellant placed the identity of appellant in issue. Throughout cross-examination, defense counsel asked complainant whether she "saw" the person who accosted, blindfolded, and raped her. Since complainant was blindfolded, she could not testify that she "saw" appellant commit the acts against her. Moreover, defense counsel suggested that another person could have been hiding in the house and that it could have been that person that raped complainant. During final argument defense counsel stated:

Furthermore, [*complainant*] cannot positively say to the jury that Joe Bob Kowey is the person that she saw put the blindfold on her, tie her up or raped her. And she cannot positively say for sure that no one else was in that house.

We do know there was a bed in that house and that the owner of the house would come there to spend at least one night a week. We don't know what kind of person he was, maybe he brought somebody over there with him. I don't know. Maybe he was just a transient.

We don't know that he wasn't there on that day.

And what I submit to you, ladies and gentlemen of the jury, is I don't think that the testimony or the evidence in this case has been proved beyond a reasonable doubt the fact that someone else other than Mr. Kowey may have tied [*complainant*] up or maybe Mr. Kowey did tie her up but did he rape her?

If you look at the facts, you have to judge it just by what you heard from the witness stand. I submit to you you've heard no testimony and no evidence to positively ID Mr. Kowey as the man that either tied [*complainant*] up or blindfolded her or raped her.

When the state's only identifying witness is impeached on cross-examination, raising the issue of identity, the extraneous offense becomes admissible. *Siqueiros v. State,* 685 S.W.2d at 71; *Ferrell v. State,* 429 S.W.2d 901, 903 (Tex.Crim.App.1968). The extraneous offense becomes admissible even where the state's direct evidence is uncontradicted by other evidence, but is undermined only on cross-examination. *Albrecht v. State,* 486 S.W.2d at 102.

Testimony regarding the two extraneous offenses committed by appellant show that there is an incredible similarity between the two previous rape offenses and the instant offense. The distinguishing characteristics common to all three offenses are that:

(1) Each of the three female victims was acting as a real estate agent.

(2) Appellant contacted each woman and asked that she show him the house she had for sale.

(3) Appellant violently attacked each woman while she was alone in the house with him.

(4) Appellant tied the hands of each woman behind her back.

(5) Appellant blindfolded each woman.

(6) Appellant told each woman that he wanted her money.

(7) Appellant ripped or cut the crotch out of each women's underwear or panties. (In this case, appellant placed panty hose on the complainant and then ripped out the crotch.)

(8) Appellant engaged in sexual intercourse with each victim.

These distinguishing characteristics are sufficient to support a finding that all of the crimes were committed by the same individual. Since the identity of appellant was placed in issue and the previous extraneous offenses and the instant offense contained distinguishing similarities we hold that the trial court properly admitted evidence of appellant's extraneous offenses. Points of error four, five, six and seven are overruled. Accordingly, the judgment of the trial court is affirmed.