**Billy NATIONS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–93–00428–CR.**

Court of Appeals of Texas, Austin.

March 1, 1995.

Rehearing Overruled April 12, 1995.

---

481

David L. Botsford [Signed Brief] Botsford & Sauer, L.L.P., Austin, for appellant.

Ronald Earle, Dist. Atty., Philip A. Nelson, Jr. [Signed Brief] Asst. Dist. Atty., Austin, for the State.

Before ABOUSSIE, B.A. SMITH and DAVIS,* JJ.

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003(b) (1988).

DAVIS, Justice.

After finding appellant guilty of the offense of aggravated sexual assault, Act of May 26, 1987, 70th Leg., R.S., ch. 573, § 1, 1987 Tex.Gen.Laws 2275, *amended by* Act of July 18, 1987, 70th Leg., 2d C.S., ch. 16, § 1, 1987 Tex.Gen.Laws 80 (Tex.Penal Code Ann. § 22.021, since amended), the jury assessed punishment at confinement for thirty years. Appellant's fourteen points of error are directed to the exclusion of expert testimony, the prosecutor's jury argument, the jury's manner of determining punishment, the lack of legal and factual evidence to support the conviction, the failure to grant his motion for mistrial during voir dire examination, and fundamental errors in the trial court's charge in not including an instruction on adverse inference and incorrectly defining "intentionally" and "knowingly." We will overrule appellant's points of error and affirm the judgment of the trial court.

■ In his eleventh and twelfth points of error, which appellant briefed together, he asserts that the evidence is legally and factually insufficient to support the conviction. Specifically, appellant urges that his "acts or words" were not sufficient to place a person in the victim's circumstances in fear of death or serious bodily injury. A person commits aggravated sexual assault if he commits sexual assault and "by acts or words places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person." Penal Code § 22.021(a)(2)(A)(ii). When reviewing the legal sufficiency of the evidence to support a conviction, the test is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Carlsen v. State*, 654 S.W.2d 444, 448 (Tex.Crim. App.1983).

The victim's testimony shows that shortly after she turned out the lights in her apartment and got in bed about 1:30 a.m. on August 13, 1991, she heard a "crash-like miniblinds or glass breaking." The victim related that she "sat up in bed and just screamed as loud as I could—within a matter of seconds, this guy was on top of me and I fought him as long as—I could, and he was much bigger than me—he had a stocking over his face—I continued to fight with him until hit me a few times, and at this point I just feared for my life—I thought he was really going to hurt me if I didn't stop fighting, so at that point I stopped fighting." The intruder told the victim to be quiet and, using duct tape, taped over her mouth, eyes and "taped my hands behind my back." The attacker performed oral, vaginal and anal sex on the victim. The victim stated that "if I did not stop fighting, there was not a doubt in my mind that he wouldn't kill me." Identification of appellant as the attacker was based on her being able to see appellant under the bottom of her blindfold after he removed his headcover and getting a "really good glimpse" of him when he returned to her apartment for a brief moment immediately following the attack after she had removed the blindfold.

Appellant directs our attention to the failure of the evidence to show a verbal threat to the victim's life or a display of any weapon and a lack of evidence to show that the victim sustained serious bodily injuries. The core issue is whether there were "acts or words" that would place a reasonable person in the victim's circumstances in fear that death or serious bodily injury would be imminently inflicted upon her by her attacker. *Kowey v. State*, 751 S.W.2d 587, 591 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd).[1] In *Kowey,* the victim, a real estate agent, had been asked by the defendant to show him a house. After entering the vacant house, the defendant slammed the victim against a wall, blindfolded and bound her, pushed her down on a bed, and raped her. While the victim testified that she did not recall whether the defendant said anything to her when he pushed her down on the bed, she stated that she feared that the defendant was going to

---

1. *Kowey* was tried under then Act of May 29, 1983, 68th Leg., R.S., ch. 977, § 3, 1983 Tex. Gen.Laws 5311, 5315 (Tex.Penal Code Ann. § 22.021(a)(2), since amended), an almost identical statute with no relevant differences from the applicable provisions in the instant cause.

kill her. The *Kowey* court held that the victim's expressed fears of injuries and death were eminently reasonable under the circumstances. *Id.* at 592.

In the instant cause, the attacker, with head and face covered, broke into the victim's apartment in the early hours of the morning. The victim, who is 5′1″ and weighs 108 pounds, was the sole occupant of the apartment; her larger attacker jumped on her, hit her, and bound her eyes, mouth and hands with duct tape. We find the victim's expressed fears of injury and death were reasonable under the circumstances. Viewing the evidence in the light most favorable to the verdict, we hold that the combined and cumulative force of all the incriminating circumstances was sufficient for the rational trier of fact to conclude beyond a reasonable doubt that appellant intentionally placed the victim in fear that death or serious bodily injury would be inflicted upon her.

Appellant also urges that the evidence is not factually sufficient to support the conviction. In *Stone v. State*, 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd untimely filed), this Court set forth the following standard for a factual review of the evidence:

> [T]he court views all the evidence without the prism of "in the light most favorable to the prosecution." Because the court is not bound to view the evidence in the light most favorable to the prosecution, it may consider the testimony of defense witnesses and the existence of alternative hypotheses. The court should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

*Id.* at 381 (citations omitted).

After considering and weighing all the evidence pursuant to the dictates of *Stone*, we hold that the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Appellant's eleventh and twelfth points of error are overruled.

In his first point of error, appellant asserts that the trial court erred in excluding the testimony of an expert witness. Appellant's proffered expert testimony concerned the victim's identification of appellant as the perpetrator, the most highly contested issue in the case. Out of the presence of the jury, Dr. Caren Phelan, a family psychologist, stated a number of factors that may affect the reliability of eyewitness identification. Dr. Phelan opined that a witness's identification in a photographic lineup could be incorrect under the hypothetical example where the witness, after viewing the lineup, first stated, "that could be him"; then stated, "she thought it was the suspect"; followed by, "she was sure [it was the person who assaulted her]."

Appellant urges that Dr. Phelan's expert testimony could have assisted the trier of fact in determining the reliability of the victim's identification of appellant.[2] The burden of establishing the admissibility of an expert's opinion rests on the party offering the evidence. *Holloway v. State*, 613 S.W.2d 497, 501 (Tex.Crim.App.1981). The trial court's decision to admit or exclude the expert testimony will not be disturbed absent a clear abuse of discretion. *Steve v. State*, 614 S.W.2d 137, 139 (Tex.Crim.App.1981). Appellant has not cited, nor have we found any cases, where a trial court has been held to have abused its discretion in excluding expert testimony relative to the reliability of eyewitness testimony.

Dr. Phelan testified that she knew very little about the instant cause and had not talked to any of the witnesses. However, an expert witness can testify solely on the basis of a hypothetical question. *Fielder v. State*, 756 S.W.2d 309, 320–21 (Tex.Crim.App. 1988). "The threshold determination for admitting expert testimony is whether the 'specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue....' " *Rousseau v. State*, 855

---

2. Rule 702 of the Texas Rules of Criminal Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

485

S.W.2d 666, 686 (Tex.Crim.App.) (quoting rule 702), *cert. denied*, —— U.S. ——, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). In *Fielder*, the court held that the expert's testimony could be of "appreciable aid" to the trier of fact where the hypothetical facts fell within the expert's experience and expertise relative to the conduct of a woman who endures an abusive relationship, a subject about which the average lay person has no basis for understanding. *Id.* at ——, 114 S.Ct. at 321.

The Court of Criminal Appeals has noted that federal circuit courts are in substantial agreement as to the reasons why it is not an abuse of discretion to exclude expert testimony concerning the unreliability of eyewitness testimony. *Pierce v. State*, 777 S.W.2d 399, 415 (Tex.Crim.App.1989), *cert. denied*, 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990). Among the reasons reviewed by the court in *Pierce* is a jury's qualification to determine on the credibility of eyewitnesses when aided by cross-examination and common knowledge of memory and its effect on perception coupled with the problems attendant to expert testimony. *Id.* at 415.

Appellant urges that in the instant cause, unlike *Rousseau* and *Pierce*, appellant's questions embodied hypothetical facts that "fit" this cause. While this was one factor mentioned in *Pierce* and *Rousseau*, we hold that the trial court did not abuse its discretion in excluding the proffered expert testimony in the instant cause. The jury was amply qualified to make a determination of the reliability of the victim's identification of appellant in light of extensive cross-examination of the victim and the jury's inherent knowledge of memory and its effect on perception. Appellant's first point of error is overruled.

■ In his second point of error, appellant contends that the trial court erred in overruling his objection to the prosecutor's argument at the guilt stage of the trial. The following argument forms the basis of appellant's complaint:

[Prosecutor]: Members of the jury, the tangled web that this defendant did, in fact, weave. The tangled web that he spun came back to get him, and it is a tangled one. It is a tangled one indeed.

In order to believe this defensive theory, you have to do several things. You have to totally discount what [the victim] said.

[Defense Counsel]: Your honor, that argument is designed to mislead the jury. They do not have to believe any defense theory, but rather find a reasonable doubt.

THE COURT: I overrule your objection.

[Prosecutor]: You have to believe this theory that [the victim] was wrong and all the evidence you have that she is wrong, right? Wrong. You don't have evidence of that. You have some questions by Mr. Barrett. You never get one little doubt out of [the victim] that this is her assailant.

Appellant urges that the prosecutor's argument distorted the State's burden of proving appellant's guilt beyond a reasonable doubt.

Prior to this argument, defense counsel had emphasized several reasons why the victim's identification of appellant was flawed. Among the arguments advanced by appellant was that Officer Johnson was lazy and led the victim into identifying appellant; the victim could not identify the person who assaulted her because her testimony showed that she was "crying so hard" and had been poked in the eye; the victim's description of the person who assaulted her was off by four to six inches and forty pounds; appellant told the investigating officer that he "had been drinking from 6:00 [p.m.] until 2:00 [a.m.]— but she [the victim] never noticed that"; the victim's in-court identification was "a zero" because she was convinced that they were trying him; and "when something really happens—you get it all fouled up." Defense counsel characterized all of the foregoing observations as constituting reasonable doubt.

We do not understand the prosecutor's argument to be a plea to distort the State's burden of proof. We hold that the prosecutor's argument was a proper response to defense counsel's argument about the many factors advanced as constituting a reasonable doubt. *See Denison v. State*, 651 S.W.2d 754, 761 (Tex.Crim.App.1983). Appellant's second point of error is overruled.

■ In points of error three and four, briefed together by appellant, he contends

that he was denied a fair trial because the prosecutor's argument at the punishment stage of the trial constituted a comment on appellant's failure to testify. Appellant directs our attention to the following arguments by the prosecutor:

I want you to think about this defendant who has refused to admit his guilt. His family is here. They cannot accept his guilt. This same family has been asked to insure that he would meet the conditions of probation, and I ask you, is that conducive to reform, to grant probation to a person whose family will be telling him, it is okay.

. . . . .

I submit to you, only the defendant, by admitting his guilt, can meet those conditions of probation and truly reform. That is what this case is about. Can you come to terms with what you have done.

You didn't hear it because this defendant is so into denial and has been since the time of this offense that it can't exist. Use your own common sense. What is the first step in proving oneself? What is the first step, the first one? It is admission to oneself. Without that, there can be no treatment. . . .

How is he going to rehabilitate himself in this climate of denial and in the rest of the climate of denial that he will be in? What would probation be saying to him? How would he interpret that, a person who denies? It would be interpreted something like this: Well, I got probation. You see, I knew all along I really didn't do much wrong, and they agreed with me. I knew that. I knew I didn't do much wrong, and by golly, that was right.

The failure of a defendant to testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause. Tex. Code Crim.Proc.Ann. art. 38.08 (West 1979). The standard to be used in determining whether a prosecutorial comment violates article 38.08 is set forth in *Dickinson v. State,* 685 S.W.2d 320 (Tex.Crim.App.1984):

It is now well settled in this State that for the argument or comment of the prosecuting attorney to offend against Art.

38.08, supra., the language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to the accused's failure to testify must be a necessary one. *It is not sufficient that the language used might be construed as an implied or indirect allusion thereto.* The test employed is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. Of course, in applying this test, the facts and circumstances of each case must be analyzed to determine whether the language used was of such character.

*Id.* at 323 (citations omitted) (emphasis added).

Appellant and the victim lived in the same apartment complex. Austin police officer Theresa Montoya testified that she had no knowledge of the rape offense when she responded to a burglary call made by appellant on August 21, 1991. Montoya's testimony showed that on her arrival at appellant's apartment, appellant told her that items taken from his apartment had been found in the apartment of a woman who had been sexually assaulted and that he was a suspect; that he was out of town when the burglary and sexual assault occurred and asked her what would happen to him if he had been involved in the sexual assault. Montoya stated that appellant further volunteered that he could not have sexually assaulted the victim because he was "out drinking till two or three, that he had a lot to drink and got sick, that he couldn't commit such an offense and, that Sergeant Johnson was trying to convict him of rape because his necklace was found in the victim's apartment."

Bearing in mind that the prosecutor's remarks must be a direct allusion to the defendant's failure to testify to constitute error, the jury could have reasonably inferred that the complained of comments alluded to appellant's volunteered statements of denial of involvement to Montoya. We conclude that the arguments were not such that the jury would naturally and necessarily take them to be a comment on appellant's failure to testify.

*See Hawkins v. State,* 660 S.W.2d 65, 79 (Tex.Crim.App.1983).

■ Moreover, appellant neither lodged an objection nor made any request for relief in the trial court. In the absence of actual objection to a comment by the prosecutor on the defendant's failure to testify, nothing is presented for review. *See Johnson v. State,* 629 S.W.2d 953, 954 (Tex.Crim.App.1982); *Espinoza v. State,* 843 S.W.2d 729, 730 (Tex. App.—Austin 1992, pet. ref'd). Appellant urges that there is no necessity to object where the comments are manifestly improper and violate a statute. Assuming that the comments cited did refer to appellant's failure to testify, we hold that an instruction by the trial court to disregard would have been sufficient to cure the error under the circumstances of the instant cause. *See Hawkins v. State,* 660 S.W.2d 65, 79 (Tex.Crim.App. 1983). Appellant's third and fourth points of error are overruled.

■ In his fifth point of error, appellant asserts that he was denied an impartial trial because of the trial court's failure to include a "no adverse inference" instruction in its jury charge at the punishment stage of the trial. Appellant's complaint is directed to the trial court's failure to instruct the jury to attribute no adverse inference to appellant's failure to testify. No request was made for such an instruction nor did appellant object to its absence.

■ A jury charge that was not objected to in the trial court will result in reversal only where the error is so egregious and created so much harm that the defendant was denied a fair trial. *Heberling v. State,* 834 S.W.2d 350, 353 (Tex.Crim.App.1992). A determination of the degree of harm is made by looking at the charge, the evidence, arguments of counsel and other information contained in the record. *Id.* at 353. Our disposition of points of error three and four coupled with our review under the foregoing analysis forms the basis of our holding that fundamental error is not shown. Appellant's fifth point of error is overruled.

■ In his sixth point of error, appellant urges that the trial court erred by failing to grant his motion for new trial because his punishment was decided in a manner that was not a fair expression of opinion by the jurors. "A new trial shall be granted an accused ... [w]here the verdict has been decided by lot or in any other manner than by a fair expression of opinion by the jurors." Tex.R.App.P. 30(b)(3).

Juror Eric Stout testified at the motion for new trial hearing that in determining how many years to give appellant, he took into consideration the parole law as he understood it. Stout first admitted that he took each term of years that appellant would "actually serve" and then divided the term by four. Stout subsequently denied his use of this method. After testifying that he knew that appellant "could get out in a fourth of the time, maybe," Stout stated that he arrived at a term of thirty years "partly as a compromise against the people who wanted to throw him away." Jury foreman John Green testified that he was aware of the court's instruction about parole, but explained, "We chose the sentence" based on counsel's closing arguments and by the "framework and parameters [of the court's charge] and what we were allowed to consider and weren't allowed to consider."

The trial court properly charged the jury on the possibility of parole when the term served equals one-fourth of the sentence, and instructed the jury not to consider the manner in which the parole law may be applied in the instant cause. *See* Tex.Code Crim.Proc. Ann. art. 37.07, § 4(a) (West Supp.1995).[3]

"[I]t is well established that issues of fact as to jury misconduct raised at a hearing on motion for new trial are for the determination of the trial judge, and where there is conflicting evidence, there is no abuse of discretion where the motion for new trial is overruled." *Moreno v. State,* 587 S.W.2d 405, 412 (Tex.Crim.App.1979). In light of the conflicting evidence as to how the sentence was determined in the instant cause, we hold that there was no abuse of discretion in the trial court overruling the motion for new

**3.** The statutory provision under which the parole instruction was given in the instant cause has been held to be constitutional. *Muhammad v. State,* 830 S.W.2d 953 (Tex.Crim.App.1992).

488

trial. Appellant's sixth point of error is overruled.

■ In his seventh point of error, appellant asserts that the trial court erred in failing to grant him a new trial because the jury considered an erroneous interpretation of the parole law that resulted in appellant receiving increased punishment. *Sneed v. State*, 670 S.W.2d 262 (Tex.Crim.App.1984), sets out the test for determining whether a jury's discussion of parole law constitutes reversible error:

> To show that a jury's discussion of the parole law constitutes reversible error, it must be shown that there was
>
> (1) a misstatement of the law
>
> (2) asserted as a fact
>
> (3) by one professing to know the law
>
> (4) which is relied upon by other jurors
>
> (5) who for that reason changed their vote to a harsher punishment.

*Id.* at 266.[4]

Appellant urges that the testimony of juror Stout to the effect that another juror stated that he regularly hired parolees in his business and that they had routinely been released after only serving a quarter of their sentence constituted a misstatement of the law. A further examination of Stout's testimony reflects that Stout also said, "We didn't discuss [the law of parole]—my understanding from the court is that we couldn't know for sure," and that he relied on the court's charge rather than any other juror's knowledge about parole in arriving at his verdict. Jury foreman Green testified that one juror who owned a small business stated that he had hired parolees with favorable and unfavorable experience, but that he did not make any statements indicating special knowledge of the law. Green further stated that in arriving at a sentence, the jury relied on counsels' arguments and that it was his impression that all members of the jury thought that the accused might have to serve more than one-fourth of his sentence. Given the trial court's authority to resolve conflicting testimony, appellant has clearly failed to

meet the five-prong *Sneed* test to show reversible error.

Appellant also points to a question the jury submitted to the trial court during its deliberations, asking: "Is there any consideration for good behavior? Is it all he will do less than 24 months?" The trial court responded: "The answer to your question is contained in the court's charge, I can only direct you to the court's charge."

In *Kelley v. State*, 841 S.W.2d 917 (Tex. App.—Corpus Christi 1992, no pet.), the jury asked the trial court: "One year in a state institution—would be equal to how much time in our time, as a free individual?" The trial court responded that it was not within the discretion of the jury and that they were not to consider the issue for any purpose. Two jurors testified that they had raised the issue because a juror did not know what percentage of sentence time the defendant would serve. The *Kelley* court held that the defendant had not met any of the requirements of the *Sneed* test. *Id.* at 921. In the instant cause, we hold that the testimony regarding discussions during deliberations and the jury's inquiry to the trial court, whether considered separately or together, fail to meet the *Sneed* test. Appellant's seventh point of error is overruled.

In his eighth point of error, appellant contends that the method the jury used to determine punishment deprived him of his right to sentencing by a jury required under Texas law. Appellant urges that the right to jury sentencing guaranteed by article 37.07 of the Texas Code of Criminal Procedure implies proper, fair and impartial action by the jury. Appellant points to the trial court's accurate instruction to the jury relative to its consideration of parole law. The trial court instructed the jury:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*Buentello v. State*, 826 S.W.2d 610, 614 (Tex. Crim.App.1992).

4. The Court of Criminal Appeals has recently affirmed that *Sneed* is still a viable test. *See*

*See* Tex.Code Crim.Proc.Ann. art. 37.07, § 4(b) (West Supp.1995).

Appellant directs our attention to juror Stout's response, "[y]eah, I considered it," to a question about whether he applied parole law in determining appellant's sentence. As heretofore noted, Juror Stout gave conflicting testimony on this issue. In addition, appellant points to the jury's inquiry considered in his seventh point of error. We find our disposition of appellant's sixth and seventh points of error dispositive of this point of error. Appellant's eighth point of error is overruled.

In his ninth point of error, appellant urges that the method the jury used to determine punishment violated his due process rights to jury sentencing under the United States Constitution and the Texas Constitution. While appellant concedes that there is no federal or state constitutional right to jury sentencing, he contends that the statutory right to jury sentencing is subject to constitutional guarantees relating to fundamental fairness and equal protection of the law. As heretofore recognized, the Texas parole law instruction has been held constitutional. *Muhammad,* 830 S.W.2d at 954–56. In light of our disposition of appellant's previous points of error relating to jury misconduct, we hold that no constitutional violation has been shown. Appellant's ninth point of error is overruled.

In his tenth and fourteenth points of error, appellant asserts that the trial court committed fundamental error at the guilt stage of the trial by incorrectly defining "intentionally" and "knowingly" as related to the "result" of appellant's conduct. The indictment alleged that appellant:

> [I]ntentionally and knowingly sexually assaulted [the victim] by causing his sexual organ to penetrate the female sexual organ of [the victim], a person not the spouse of [appellant], without [the victim's] consent, and the said [appellant] compelled [the victim] to submit and participate by the use of physical force and violence, and the said [appellant] did then and there intentionally and knowingly by acts and words place [the victim] in fear that serious bodily inju-

ry would imminently be inflicted on [the victim].

The trial court submitted the following definitions of "intentionally" and "knowingly" in its charge to the jury.

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to *cause the result.*

> A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to *cause the result.*

(Emphasis added.)

The three conduct elements to which a culpable mental state may be involved in an offense are: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *See* Tex.Penal Code Ann. § 6.03 (West 1994); *Cook v. State,* 884 S.W.2d 485, 487 (Tex.Crim. App.1994). Appellant urges that the element of "penetration" in rape is a "nature of conduct" element rather than a "result of conduct" element, and that the "without consent" element of rape is a "surrounding circumstance." No objection was voiced in the trial court to the definition of "intentionally" or "knowingly."

The difficulty implicit in determining which conduct element applies to a particular offense is graphically illustrated in Judge Maloney's concurring opinion in *Cook.* Judge Maloney used the offense of aggravated sexual assault to illustrate the problem:

> Determining whether a particular offense contains more than one conduct element may in itself be problematic. Consider, for example, the case of an aggravated sexual assault. The culpable mental state applicable to that offense is "intentionally or knowingly." *See* Tex.Penal Code Ann. § 22.011(a)(1)(A) (person commits sexual assault if he "intentionally or knowingly ... causes the penetration of the anus or female organ of another person by any means, without that person's consent"). The question is which conduct element is applicable. It could be argued that "causes of penetration" is either a result of conduct element (the result being

penetration) or a nature of conduct element (the nature being penetration). It could further be argued that "without that person's consent" is a circumstance surrounding the conduct or, alternatively, that it goes to the overall nature of the defendant's conduct. The case becomes even more complicated where an aggravated element is added. Under the Court's opinion today, these ambiguities will need to be reconciled in the charge.

*Id.* at 493 n. 5.

Our research on this issue places us in total sympathy with the dilemma expressed in Judge Maloney's concurring opinion. While those of us who sit on reviewing courts have the luxury of time for research and reflection, our problems pale in comparison to those of trial courts who operate under time constraints in preparing jury charges.

Since appellant voiced no complaint in the trial court, reversible error will result "only if the error is so egregious and created such harm that [appellant] 'has not had a fair and impartial trial.'" *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). The degree of harm "must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

The contested issue throughout the trial was the accuracy of the victim's identification of appellant as the person who assaulted her. The intent of the offender was never in issue. The trial court tracked the aggravated rape statute in both the definitional and application paragraphs of its charge. *See* Penal Code § 22.021(a)(2)(A)(ii). Assuming that the trial court erred in its definitions of "intentionally" and "knowingly," we hold that the error was not so egregious as to deny appellant a fair and impartial trial. Appellant's tenth and fourteenth points of error are overruled.

■ In his thirteenth point of error, appellant contends that the trial court abused its discretion in overruling appellant's motion for mistrial after venireperson Mustoe, dur-

ing defense counsel's general questioning of the panel, volunteered that defense counsel was splitting hairs and that he could not be fair in this case. The following occurred after the venireperson's initial statement:

MR. BARRETT [Defense Counsel]: Is there anybody else up here that feels that the United States constitution and the rights guaranteed to a citizen accused of a crime are just splitting hairs and we ought not to pay any attention to them?

MR. MUSTOE: May I leave, sir? This is all very emotionally traumatic for me. I was abused as a child. I don't need this s___. I need to get out of here.

MR. BARRETT: I will challenge for cause right now.

THE COURT: You are excused. Thank you.

MR. MUSTOE: I went down three times and gave my note and they keep putting my card in. And the guy is guilty; you can see it on his face.

MR. BARRETT: Your Honor, I have a motion for mistrial.

THE COURT: Members of the jury, you are instructed to disregard that comment, as I can tell you have by virtue of your reaction to it.

The offending statement was not responsive to any question. "[N]ot having been solicited" by defense counsel, it "should not be charged to the questioner." *Nathan v. State,* 788 S.W.2d 942, 944 (Tex.App.—Fort Worth 1990, no pet.).

In *Nathan,* a venireperson volunteered that a prior jury experience might influence him because the jury in the prior case did not know when they sentenced the defendant that the accused might only serve a fifth or sixth of the sentence. After noting that the trial court had instructed the jury panel in an effort to cure any prejudice, the *Nathan* court held that in the absence of any claim or showing in the record that the comment was discussed or acted upon by the jury, the trial court's admonishment cured any prejudice that might have flowed from the comment. *Id.*

In the instance cause, we find it significant that the trial court followed its instruction to

disregard with, "as I can tell you have by virtue of your reaction to it." As in *Nathan,* there is no showing that the offending statement was discussed or acted upon by the jury. We hold that the trial court's admonishment cured any prejudice that may have resulted from the venireperson's comment. Appellant's thirteenth point of error is overruled.

The judgment is affirmed.